## Zina P. Lloyd v. Fitzwilliam H. Chambers, a Circuit Judge for Wayne County.

*Ante-mortem probate—Notice to widow—Judicial action.*

1. Mandamus is a proper process for setting a court in motion, but not for reviewing its affirmative judicial action if there is any other effectual remedy.

2. A widow's right to administer upon her husband's estate or to name a guardian for children under fourteen, is substantial and gives her such an interest as would entitle her to notice of any judicial proceedings that may be taken to establish a will which might divest her of it, and which she claims to be invalid.

3. Act 25 of 1883 providing for the ante-mortem probate of wills contemplates the preservation of a widow's statutory right to administer or to nominate guardians, but as its own enforcement is inconsistent with the maintenance of these rights it is inoperative.

4. The action of a court in affirming an order appealed from amounts to an assertion of jurisdiction, and is improper where the court considers the proceeding extra-judicial. So *held* where the ante-mortem probate of a will was denied and the appellate court affirmed the order on the ground that the statute authorizing it was unconstitutional and conferred no authority. The proceeding should rather have been quashed or dismissed.

5. An order denying the probate of a will should not be affirmed without a hearing on the merits.

6. *Nemo est hæres viventis* is a maxim established by statute as well as at common law. A man and his possible heirs cannot be parties in

conflicting interest, and it is to litigation between such parties only that judicial power is limited. A statute therefore that provides for the probate of a will before the testator's death and leaves him at liberty to revoke or alter it, or by removal from the jurisdiction to escape the effect of any action under it, is inoperative and void because it does not provide for any proceedings that can be conclusive or are in any proper sense judicial.

Mandamus. Submitted Jan. 13. Granted April 9.

*John H. Bissell* for relator.

*Ervin Palmer* for respondent.

COOLEY, C. J. The relator presented his will to the probate court for the county of Wayne for probate and allowance during his life-time, under the statute of 1883. Pub. Acts, No. 25.

The leading object of the will appears to have been to exclude one son, and also the relator's wife, so far as it was within his power, from all share in the distribution of his estate.

The probate court heard the case, and decided against the will. The relator appealed to the circuit court, where a trial was entered upon before a jury, and after two witnesses had been examined in support of the will, the circuit judge stopped the case, discharged the jury, and entered an order affirming the disallowance of the will by the probate court. This was done on the expressed ground that the act under which the proceedings were taken was unconstitutional. A principal reason for this conclusion was that the act failed to make provision for notice to the wife and an opportunity for her to be heard.

The relator thereupon applied to this Court for a mandamus to compel the circuit judge to set aside his order and to proceed to a hearing of the case on the evidence.

As the order on the appeal is a final order affirming the action of the probate judge, upon which, if the proceeding is judicial, a writ of error would lie to this Court, it is manifest that the relator is seeking to make the mandamus a substitute for the ordinary process of review, and his application

might very properly be refused for that reason. Mandamus is a proper process for setting a court in motion, but not for reviewing and setting aside its affirmative judicial action when other suitable and effectual remedy exists. But as the parties have been fully heard in this case, and the reasons for declining to dispose of it on the merits at this time would be only technical, the matter of form will be overlooked.

The answer of the relator to the objection that the act in question does not provide for notice to the wife, is that the interests of the wife are saved to her, whatever may be the will. If she is dissatisfied with the provisions of the will, she may claim and have the same interests she would have in her husband's estate if no will were made. How. Stat. § 5824.

But this seems to be a very insufficient reason for failing to give the wife an opportunity for a hearing. A wife's interests in her husband's estate are not likely to be purely selfish and personal; the two co-operate in accumulating it, generally with an object in view that eventually it shall benefit children or others to whom they are mutually attached; and if the husband, while mentally incompetent, or in the hands and under the influence of scheming and mercenary persons, is making disposition of it, no person is so justly entitled as the wife to make a showing of the facts to defeat it.

But there are some rights which the wife would have as widow, but which the husband might take away by will, which clearly give her a standing in court on the ground of interest. One of these is the first right to administer upon the estate. How. Stat. § 5849. This is an important and substantial right, and is given to the widow for that reason. But it is taken away if the husband makes a will and names an executor. Another is to name a guardian for children under the age of fourteen; for though the statute does not expressly recognize this, it is recognized by unwritten law that the mother's nomination of guardian will be confirmed, as of course, if no good cause to the contrary appears. But the father may appoint a guardian for minor children by will; and though, by the statute as amended in 1883, the appoint-

ment requires the approval of the probate judge (How. Stat. § 6311), the mother's preference of some other person would hardly be legal cause for disapproval. On either of these grounds, if there were no other reasons, the wife should have opportunity to be heard, if she alleges that a will not made freely or with due competency is being offered for probate.

But it may be said that these rights of the widow and mother are not property rights, and therefore not protected by the Constitution, but may be taken away by the Legislature at pleasure. It is to be observed, however, that the Legislature does not profess to take them away; they remain nominally protected by the law, and the Act of 1883 is expected to have effect while preserving them. The difficulty, then, is that the Act of 1883 makes no sufficient provision whereby, in the case of a married man, it can be carried into effect consistently with the preservation of rights which were before given, and which must be supposed to have been intended should remain. It therefore makes no sufficient provision for its own enforcement without conflict with other statutes not meant to be repealed, and is inoperative for that reason.

In all we have said on the subject we have assumed that the proceeding to probate the will of a living person under the statute was to be considered a judicial proceeding, and the order made thereupon a judgment. This is evidently the view taken by the proponent, who seems to assume that the adjudication will be final, though, in fact, it will at all times be subject to his own discretion or caprice. But if he is in error in treating the proceeding as judicial, we do not see that the circuit court had anything to do with the case. The probate court had acted and decided against the proponent, and we know of no authority for requiring the circuit court to take cognizance of appeals in cases not properly judicial, and to give its time and attention to the making of orders which are not judgments, and which the party seeking and obtaining them is under no obligation to leave in force for a day or an hour.

SHERWOOD and CHAMPLIN, JJ. concurred.

CAMPBELL, J.   In this case, Lloyd attempted to have his will established during life in the probate court for Wayne county, and an appeal was taken from the probate court to the circuit.   In that court the circuit judge was of opinion that the proceeding was extrajudicial, and refused to allow it to go on ; but, instead of dismissing or quashing it on that ground, entered an order affirming the probate decree.   Mandamus is now applied for to vacate that order.

There can be no doubt of the impropriety of the order of the circuit court.   By affirming the probate order he asserted jurisdiction, and he had no right to affirm it without a hearing on the merits.   But whether he should proceed to such a hearing is the principal question before us.

The case is one where we can get no help from similar precedents, as the statute is new and singular.   Judicial proceedings to probate a will while the testator is living are unheard of in this country or in England ; and inasmuch as the statute only makes the decree effective in the single case of the establishment of the will and subsequent death without revocation or alteration, and leaves it open to the testator to make any subsequent arrangement which he may desire, or to oust the jurisdiction by change of residence, or to leave the will once rejected open to probate in the usual way after death, the proceeding is still more anomalous.   I am disposed to think, with the circuit judge, that this is not in any sense a judicial proceeding which he was bound to consider or entertain.

This is the first instance in our jurisprudence in which an attempt has been made to compel a living person, as a condition of relief, to enter upon a contest with those who, until his death, can have no recognition anywhere, and who after his death are presumed to represent him, and not any hostile interest.   The maxim that the living can have no heirs is as well settled by statute as by common law.   Until a man dies it can never be known who will succeed him, even if intestate, and whatever may be the probability there is no cer-

tainty that a single one of the persons who have come in here to oppose the will may survive the testator. The law gives no preference to contingent expectations, and legally it is just as possible that the State may take by escheat, as that the persons now litigating, or any other more remote relatives, will become interested.

It is also within the power of relator to dispose of his entire property, not merely by a new will, but by sale or gift, and in such event there will be nothing for this will to dispose of, and possibly nothing for these or any other kindred to inherit. It is also competent for him to go into another county or state or country, either of which acts would put his estate beyond the jurisdiction of Wayne county; and either of the two latter may change the course of inheritance or otherwise affect the disposal of his estate.

I cannot conceive it possible that a proceeding can be dealt with as judicial when the chief party to it will not be precluded by the decree from doing exactly as he might have done had the court never been called on to act at all.

This statute, which was probably designed to prevent the unseemly and disgraceful attempts, too often made, to defeat the enforcement of the last will of persons whose competency to deal with their own affairs was never doubted or interfered with, has been so drawn as to remove none of the difficulties, but rather to make them worse. It is a singular, and in my judgment, a very unfortunate spectacle to see a man compelled to enter upon a contest with the hungry expectants of his own estate, and litigate while living with those who have no legal claims whatever upon him, but who may subject him to ruinous costs and delays in meeting such testimony as is apt to be paraded in such cases. The practice which has usually prevailed in civil-law countries, and also is said to have been customary in various parts of England (see Seld. Ecc. Jur. Test. 5), of having wills executed or declared in solemn form, or acknowledged before reputable public officers and a sufficient number of disinterested witnesses to render it unlikely that the testator is not acting with capacity and freedom, has been approved by the continued

experience of most countries, and has saved them from the post mortem squabblings and contests on mental condition which have made a will the least secure of all human dealings, and made it doubtful whether in some regions insanity is not accepted as the normal condition of testators. There is no sensible reason why a will which is always revocable and contingent should not be established, presumptively at least, by such an acknowledgment as will suffice to prove a deed which is irrevocable; and where, as is usually the case abroad, such an acknowledgment is made before trustworthy officers, in the presence of known and reputable witnesses, and in the enforced absence of all other persons, the security against incapacity and incompetency is quite as strong as can be found in a contest before a court or jury that never saw the testator. A man's incapacity, if it exists, will not easily escape the notice of his disinterested friends and neighbors, and when they certify to his competency and freedom of action with their attention directly called to their own responsibility in doing so, they are seldom mistaken, and those who seek to impugn their action, if allowed to do it at all, should be compelled to assume the burden and risk themselves. But this is not judicial action.

In the proceedings of various kinds familiar in England, where conveyances are made effective by acknowledgment and enrollment before various classes of public officers or tribunals, it was never deemed proper or necessary to bring general heirs presumptive before the acknowledging officer, in order to give efficacy to transfers in fee-simple, either of men or women, although they are as clearly affected in their prospects of inheritance as they would be by a will. And in the cases where testimony is to be perpetuated for use in future controversies, the rule is inflexible that, no matter how great the probability of inheritance may be, the heir presumptive is not either a competent or permissible party to such litigation; and this is so even in case of estates tail, and although the circumstances are as strong as possible against the chances of any change. *Earl Belfast v. Chichester* 2 Jac. & W. 439; *Allan v. Allan* 15 Ves. 130; *Lord*

*Dursley v. Fitzhardinge Berkeley* 6 Ves. 251; *Sackvill v. Ayleworth* 1 Vern. 105; *Smith v. Att'y Gen.* cited, 6 Ves. 255 and 15 Ves. 133.

The broadest definition ever given to the judicial power confines it to controversies between conflicting parties in interest, and such can never be the condition of a living man and his possible heirs. Our statutes have never undertaken, and do not in this case undertake, to give to the heirs any interest which will even be fixed by this probate, or which may not be cut off at any time by their own death, or by relator by new will or conveyance. It is by no means free from doubt what classes of probate proceedings under our system are to be treated as judicial proceedings in the proper sense of that term; and it is not important here to consider that question, because this proceeding is not even a suit for probate. There has never been any proceeding known to our laws for the mere purpose of establishing the will even of a deceased person. The probate of wills under our statutes is merely a part of the proceedings to administer the estates of deceased persons in the court that has jurisdiction and charge of such estates. This rule is so general that in some states devises are not probated at all, and in some the probate is not conclusive, because controversies concerning land are usually tried in other courts. We have enlarged the jurisdiction in probate so as to reach lands for some purposes, and have made all wills subject to probate. But there is no case where an original probate can be granted here, except in the court having jurisdiction over the estate; it cannot be done separately.

This statute does not attempt to change the place of ultimate probate, and it does not make a decree against the will either a bar or even admissible to prevent future probate after death. It makes no provision for making a finding either way evidence for any purpose during testator's life, so as to negative testamentary capacity, or otherwise to affect him. And it has no force for any purpose so long as he lives.

I am of opinion that the statute is inoperative, as not within any recognized judicial power, and that the courts

cannot be called upon to administer it, and that
The mandamus should vacate the whole proceedings.

SHERWOOD and CHAMPLIN, JJ. concurred.