RASSNER *v.* FEDERAL COLLATERAL SOCIETY, INC.

1. PROPERTY—POSSESSION.
   Possession is one of the most valuable incidents of ownership of property.

2. CONSTITUTIONAL LAW—PROPERTY—DUE PROCESS.
   The term "property," as used in the various guaranties against the taking of property without due process of law, is used in its most general sense as embracing everything over which a man may have exclusive control or dominion, may embrace all character of vested rights whether or not they may technically be called property rights, and does include title, possession, rights of acquisition and control, the right to make any legitimate use or disposal of the thing owned, such as to pledge it for a debt, or to sell or transfer it. (U. S. Const. Am. 14; Mich. Const. 1908, art. 2, § 16).

3. SAME—DUE PROCESS—POSSESSION—NOTICE—HEARING.
   No one, consistent with constitutional safeguards, can be deprived of possession of property without reasonable notice and an opportunity to be heard.

4. SAME—HEARING—REGAINING TITLE.
   A court cannot take property from the possessor thereof without a hearing and compel him to prove title in order to regain it.

5. STATUTES—CONSTITUTIONAL LAW—COURTS—NOTICE—HEARING.
   The constitutionality of a statute must rest upon the provisions of the statute itself and not upon the grace or favor of a court in giving the notice and affording the opportunity for hearing not provided for by the statute.

6. SAME—CONSTITUTIONAL RIGHTS.
   It is essential to the validity of a statute that it furnish the means whereby one may enforce his constitutional right.

7. SAME—PERMISSIVE ACTION BY ADMINISTRATOR OF STATUTE.
   When courts are considering the constitutionality of a statute, they should take into consideration the things which the statute permits, and not what action an administrative officer may or may not take to supply omissions.

8. PAWNBROKERS—STATUTES—THIRD PARTY CLAIMANT—DUE PROCESS.

> Statute regulating the business of pawnbrokers which provides that upon complaint of one claiming that property has been pawned or pledged without his consent and has reason to believe property has been pawned or pledged within the city or village a search warrant directing sheriff or constable to search the several pawnshops and turn over such property to claimant upon latter's providing a bond in twice the value of property claimed and of 10 days' duration unless suit is begun, but which fails to provide for notice or hearing to either the pawner or pawnbroker *held*, unconstitutional as permitting the taking of property without due process of law, notwithstanding the pawnbroker in the instant case was afforded an opportunity to be heard by the court (U. S. Const. 14th Am., § 1; Mich. Const. 1908, art. 2, § 16; 2 Comp. Laws 1929, §§ 9698, 9699).

9. STATUTES—CONSTITUTIONAL LAW—OTHER AVAILABLE REMEDY.

> A statute which provides procedure for a transfer of possession of property pawned with a pawnbroker but denying him and the pawner an opportunity for a hearing before being deprived of his property is unconstitutional notwithstanding the real owner might establish his right by another action (U. S. Const. 14th Am., § 1; Mich. Const. 1908, art. 2, § 16; 2 Comp. Laws 1929, §§ 9698, 9699).

10. PAWNBROKERS—EQUAL PROTECTION.

> Notwithstanding the fact that the business of a pawnbroker is susceptible to opportunity for receiving and concealing property from the true owner and, therefore, subject to strict regulation, the business is recognized by statute as a legitimate one and it is entitled to equal protection of the Constitution (U. S. Const. 14th Am., § 1).

11. COSTS—CONSTITUTIONALITY OF STATUTE—PAWNBROKERS—PUBLIC QUESTIONS.

> No costs are allowed in appeal involving the constitutionality of a portion of an act regulating the business of pawnbrokers, a question of public interest being involved (U. S. Const. 14th Am., § 1; Mich. Const. 1908, art. 2, § 16; 2 Comp. Laws 1929, §§ 9698, 9699).

Appeal from Recorder's Court of Detroit; Brennan (John V.), J. Submitted June 3, 1941. (Docket No. 22, Calendar No. 41,542.) Decided October 6, 1941.

Statutory proceeding by Jacob Rassner against Federal Collateral Society, Inc., a pawnbroker, to recover the possession of personal property. From order denying defendant's motion to vacate search warrant, and directing defendant to bring the property into court, it appeals. Reversed.

*Weiswasser, Jaffe & Radner,* for plaintiff.

*Guy W. Moore* and *Hal P. Wilson,* for defendant.

BOYLES, J. The only question involved here is whether Act No. 273, §§ 15, 16, Pub. Acts 1917 (2 Comp. Laws 1929, §§ 9698, 9699 [Stat. Ann. §§ 19.595, 19.596]), violate the due process clauses of the Federal (Constitution of the United States, (14th Am., § 1) and State (Michigan Constitution [1908], art. 2, § 16) Constitutions. These sections are as follows:

"SEC. 15. Whenever complaint shall be made by any person on oath to any magistrate in any city or village, authorized to issue warrants in criminal cases, that personal property belonging to such complainant has been without his consent pawned or pledged, and that the complainant believes the same to be in some pawnshop within such city or village, such magistrate, if he be satisfied that there is reasonable cause for such belief, shall issue a warrant to search for such property in the several pawnshops in said city or village, which warrants shall be directed to the sheriff or any constable of the county, commanding such officer to search the said several pawnshops where the property for which he is required to search is believed to be concealed, which places, and the property or thing to be searched for shall be designated and described in the warrant, and to bring such property or other thing before the magistrate issuing the warrant. The court before which any property so seized shall

be brought, shall cause the same to be delivered to the complainant on his issuing a bond as hereinafter provided, and if such bond be not executed within twenty-four hours, excluding Sunday, said court shall cause said property to be returned to the person from whose possession it was taken.

"Sec. 16. The said bond shall be in double the value of the property claimed, with such surety as such court shall approve, and shall be given to the person from whose possession the property was taken, with condition that the obliger [obligor] so claiming the same will pay all the costs and damages that may be recovered against him by the obligee in any suit brought within ten days from the date of such bond."

Plaintiff is engaged in the wholesale jewelry business in Detroit. On December 14, 1940, plaintiff filed in the recorder's court for Detroit a complaint, on oath, under the above section 15, alleging that he was the owner of a certain diamond ring and platinum mounting; that the same had been pawned without his knowledge or consent in defendant's pawnshop in Detroit and was then in defendant's possession, wherefore plaintiff prayed that a search warrent be issued for the same and the officer be directed to bring the said property before the court. A search warrant was thereupon issued directing the sheriff, or any deputy sheriff, or constable, to enter upon the premises of the defendant, search for said property, and, if found, bring the same before the court, "to be disposed of according to law;" the search warrant further directed the officer executing the writ to notify the person in control and possession of defendant's premises to appear in court on a day certain to show why the property thus seized should not be disposed of then and there as provided by law. No notice or order

to show cause was issued by the court, but the record before us indicates that a deputy sheriff signed a "memorandum" notifying the defendant "to be and appear personally or by attorney" at the time and place stated in the warrant, "and then and there show cause if any you have or know of" why the articles seized by virtue of the warrant should not be disposed of in the manner provided by law. The defendant appeared specially at the time and place set by the alleged order to show cause, so we assume that this was served on the defendant, although the record is silent as to proof of service of either the search warrant or the notice. Subsequent proceedings indicate that the property was not seized, but that it is still in defendant's possession.

The defendant appeared specially by attorney and moved the court to vacate the search warrant and alleged order to show cause, for numerous reasons, the only one now urged being that said sections 15 and 16 violate both Federal and State Constitutions, claiming that this procedure deprives the defendant of his property without due process of law. The court apparently deferred decision on this motion, whereupon the defendant asked to make a showing. The following colloquy occurred in open court:

"*Mr. Wilson* [Counsel for Respondent] : This, your Honor, is an order to show cause, and I didn't receive this until this morning. I desire to show, and, briefly, the showing I want to make is that this ring was pawned by one having been given the ring, by the owner, the claimed owner, and that no chattel mortgage was filed of record and, therefore, no lien, as far as our clients go, as to this property.

"*The Court:* I presume we should take testimony, shouldn't we?

"*Mr. Wilson:* If your Honor please, I presume so.

"*Mr. Jaffe* [Counsel for Complainant]: If your Honor please, I have no objection to the taking of testimony, but based upon the statute on which this search warrant was issued, this matter which Mr. Wilson raises is one to be tried out in another court.

"*The Court:* Yes, perhaps that is true.

"*Mr. Jaffe:* The statute provides for the ring to be turned over to the court, and the court is to turn it over to the complainant upon the filing of a bond double the value of the ring, and then it is up to the pawn shop, or the concern which receives this in pawn to start suit for any damage which may have resulted to them from the obtaining of this diamond ring on this procedure.

"*The Court:* That seems to be the procedure.

"*Mr. Wilson:* I think the testimony then should be taken because it may be difficult to get it later, especially from this plaintiff.

"*Mr. Jaffe:* Why should it be difficult?

"*Mr. Wilson:* I think testimony should be taken in order to show the good faith.

"*The Court:* Of course, that was only a suggestion. If you agree to it, it is all right.

"*Mr. Jaffe:* I say this: The plaintiff has sworn to—there is no plaintiff, but the complainant has sworn to an affidavit in which he has set forth he is the owner of this ring, and the search warrant was issued, according to the statute. I think there isn't any question but what our procedure is correct.

"*Mr. Wilson:* Now, if the court please, we are directed by process of this court, and I will have it in the record as soon as possible, to show cause why this ring should not be turned over to the court for the court's disposition, and I will have that. I haven't that now, and I am not prepared."

The matter was then continued by agreement but no testimony was taken and the matter was submitted on briefs. Counsel appeared in open court on January 17th, at which time the court announced it would hold the act to be constitutional, and fixed the amount of bond at $1,000. As to custody, the property was not brought into court, and the court announced:

"Gentlemen, you two men handle that issue. The court has decided the issue here, and he has issued the order. You two men may handle it from now on."

The order which was entered recites that the defendant appeared specially for the purpose of moving to vacate the search warrant, denies the motion to dismiss, directs the sheriff to demand from the defendant the property described in the complaint and to bring the same before the court, directs the plaintiff to file a bond in the sum of $1,000, and further provides "that thereupon the aforesaid diamond ring and platinum mounting shall be delivered to the said complainant, pursuant to the aforesaid statute." From this order, defendant takes a general appeal.

The act (Act No. 273, Pub. Acts 1917 [2 Comp. Laws 1929, § 9684 *et seq.* (Stat. Ann. § 19.581 *et seq.*)]), of which the challenged sections are a part, is entitled:

"An act to regulate and license pawnbrokers in cities and incorporated villages of this State, having a population of more than three thousand."

It provides that no one shall carry on the business of pawnbroker in any of the cities or villages covered by the act without first obtaining an annual license from the mayor of the city, or president of the

village, by paying an annual license fee and giving a bond. It is a comprehensive act recognizing and regulating the pawnbroker business. The validity of the other provisions in the act is not challenged in this proceeding and so far as appears from the record before us the validity of the remainder of the act is not involved in deciding the constitutionality of sections 15 and 16. The essence of defendant's claim is that sections 15 and 16 of the act fail to provide for notice of the proceedings either to the pawner or the pawnbroker, or a day in court and opportunity for hearing, before the property is taken and delivered over to another. Apparently the court recognized this infirmity by directing the officer to notify the pawnbroker to appear and show cause. Such notice is not provided for in sections 15 and 16, nor can we find any other provision in the act itself having any bearing upon such a notice, or any hearing. Neither are we aware of any provision of general statute law or court rule which might be read into sections 15 and 16 which would cover the giving of such notice and opportunity for hearing. In effect, the procedure followed by the court as above set forth denied the defendant its day in court. Does the procedure followed in the instant case satisfy the constitutional inhibition against the taking of property without due process of law?

It is claimed that section 15 merely refers to the *possession* of property, and does not seek to determine ownership. However, possession is one of the most valuable incidents of ownership. The general rule of law is stated thus in 16 C. J. S. pp. 1195, 1196:

"The term 'property,' as used in the various guaranties against the taking of property without due process of law, is used in its most general sense

as embracing everything over which a man may have exclusive control or dominion, and it has been held broad enough to embrace all character of vested rights whether or not they may technically be called property rights. It includes not only title and possession, but also the rights of acquisition and control, the right to make any legitimate use or disposal of the thing owned, such as to pledge it for a debt, or to sell or transfer it."

The precise question was before the Supreme Court of California in *Modern Loan Co. v. Police Court*, 12 Cal. App. 582, 587 (108 Pac. 56), where the court said:

"It will be unnecessary in this case to consider whether or not the magistrate sitting in search-warrant proceedings may, as the language of the statute (Penal Code, §§ 1408, 1409) imports, adjudicate the title to the property. It may be conceded, that if he passes upon the title he does so only incidentally (*Estate of Rathgeb*, 125 Cal. 302 [57 Pac. 1010]), and that the person from whom the property was taken in search-warrant proceedings may maintain an action in claim and delivery against the person to whom it was delivered, and that the award or action of the magistrate would not be *res judicata*. (*Moore v. Ewbanks*, 66 S. C. 374 [44 S. E. 971]; *Houghton v. Bachman*, 47 Barb. [N. Y.] 388, 393.) This statute, however, does at least purport to authorize the magistrate to determine the right of actual possession of the property, and actual possession is a most valued right and is an essential part of property, and no one, consistent with constitutional safeguards, can be deprived of the possession or title to property, or of any other substantial right, without reasonable notice and an opportunity to be heard. As said by the supreme court in *Meacham v. Bear Valley Irrigation Co.*, 145 Cal. 606 (79 Pac. 281, 68 L. R. A. 600): 'The

guarantee of the Constitution that he shall not be deprived of his property without due process of law gives him the right to be heard in its defense against any claim that may be made against him for its possession.' In the case of *Havemeyer* v. *Superior Court,* 84 Cal. 327, 401 (24 Pac. 121, 10 L. R. A. 627, 18 Am. St. Rep. 192), the supreme court expressed the same idea, saying, per Mr. Chief Justice Beatty: 'A court cannot take property from his (the party in possession) possession without a hearing, and compel him to prove title in order to regain it.' (See, also, *Boca & Loyalton R. Co.* v. *Superior Court,* 150 Cal. 147 [88 Pac. 715]; *Lowry* v. *Rainwater,* 70 Mo. 152 [35 Am. Rep. 420]; *Hornsby* v. *United States,* 10 Wall. [77 U. S.] 224, 242 [19 L. Ed. 900]; *Ex parte Koser,* 60 Cal. 177, 210; *White* v. *Ward,* 157 Ala. 345 [47 South. 166, 169, 18 L. R. A. (N. S.) 568]; *Bennett* v. *Davis,* 90 Me. 102 [37 Atl. 864]; *Eustis* v. *City of Henrietta,* 90 Tex. 468 [39 S. W. 567].)''

This rule has been recognized in Michigan in *Zabowski* v. *Loerch,* 255 Mich. 125, where this court said:

''An owner of real estate has the exclusive right to possession of it, and may not be deprived thereof without due process of law. State Constitution (1908), art. 2, § 16; Constitution of the United States, 14th Am., § 1.''

In the case at bar, an attempt to cure the infirmities of the act was made by the court in directing the officer to give notice of hearing to the pawnbroker. The constitutionality of the act cannot depend upon the grace or favor of the court to give notice and opportunity for hearing. Neither the court, nor the officer by direction of the court, can be depended upon to cure the infirmity. The constitutionality of an act must rest upon the pro-

visions of the act itself; sections 15 and 16 must stand or fall according to their own terms. The supreme court of California has passed so squarely upon this question (*Modern Loan Co.* v. *Police Court, supra*), that we quote its opinion at length (pp. 585, 586):

"One who is in possession of property under a claim of right cannot be deprived of its possession without due process of law; and in order to constitute due process of law, there must be notice of the time and place of hearing and an opportunity to be heard. (*Murray's Lessee* v. *Hoboken Land & Improvement Co.,* 18 How. [59 U. S.] 272, 280 [15 L. Ed. 372]; * * * *People* v. *Granice,* 50 Cal. 447.) The statute should give the parties interested in the property an opportunity of presenting, in a deliberate, regular and orderly method, issues of fact and of law to the court or to a court and jury unless a jury is waived. Under these two sections, irrespective of the value of the property, and without any right of appeal, and without the slightest notice —indeed immediately upon the return of the warrant—the magistrate may proceed to the 'proof of the ownership or of title' to the property and make an award. A proceeding permitting this contravenes the provisions of the State and Federal Constitutions that a person cannot be deprived of his property without due process of law. It is no answer to the objection urged that the magistrate quite probably will see to it in each case that notice and an opportunity to be heard are given, for the right of a person to his day in court must rest on something more substantial than favor or discretion. It is essential to the validity of a statute that it furnish the means whereby one may enforce his constitutional right.

"As said by the supreme court of this State in *Re Lambert,* 134 Cal. 626, 634 (66 Pac. 851, 854, 55 L. R. A. 856, 86 Am. St. Rep. 296): 'In the

absence from the statute of any requirement of notice to the person, any notice that might be given would be without legal force and authority, and consequently, whether acted upon by him or disregarded, the proceeding would be equally ineffective. "It is not enough that he may by chance have notice, or that he may as a matter of favor have a hearing. The law must require notice to him, and give him the right to a hearing and opportunity to be heard." ' "

The statute cannot be upheld by assuming that the courts would uniformly provide the procedure for giving adequate notice and opportunity for hearing. The statute must stand as enacted and we cannot assume that the legislature intended the courts to add the necessary saving provisions.

"It is further argued that, since the State and National Constitutions demand that property may not be taken without notice and that such is the settled law, the courts will assume that the legislature intended that notice should be given, unless its act expressly or by necessary inference demands the contrary conclusion, and that, since there is nothing of that character in this act, we will read into it a notice requirement, or will assume that the director of agriculture will comply with the general law and give an opportunity for a hearing.

"An argument which in theory is just as plausible, and in practice more so, is that, since everybody knows that a legislative act is presumed to be constitutional until the courts declare to the contrary, the director of agriculture will do the natural thing and follow the authority given him by the legislative act and annul licenses without notice.

"When courts are considering the constitutionality of an act, they should take into consideration the things which the act affirmatively permits, and not what action an administrative officer may or

may not take." *Northern Cedar Co.* v. *French,* 131 Wash. 394, 411, 412 (230 Pac. 837).

In the early case of *Hibbard* v. *People,* 4 Mich. 125 (January, 1856), this court considered a statute* authorizing search and seizure of liquor intended for sale contrary to law. The statute there under consideration disclosed the infirmities claimed for the statute now before us. In considering the question of notice and hearing, this court said (p. 130):

"Section 7 of the liquor law makes no provisions whatever for securing to the owner of the property seized any of these rights. It gives him no information of the nature of the accusation, nor does it insure him a trial. His property may be seized and detained from him perpetually, and under this law he can have no redress, unless some one shall have commenced, or shall prosecute to effect, an action against him for a specific penalty.

"It is said that the proceedings under the liquor law *may* be so conducted, consistently with its provisions, as to secure the person whose property is seized all his constitutional rights. If this is *possible,* that is not enough. The law must afford to the accused the means of *demanding* and *enforcing* his constitutional rights, and if it authorizes a course of procedure which could deprive him of them, it is void. It is not to be left to the discretion of prosecutors or magistrates to adopt a course of procedure which may or may not be in conformity with the requirements of the Constitution, as they may elect."

*Parsons* v. *Russell,* 11 Mich. 113 (83 Am. Dec. 728), involved the constitutionality of a statute † authorizing the seizure of a steamer under the boat and vessel law on a warrant issued by a circuit court commissioner to satisfy a claimed debt. The

---

\* Act No. 17, Pub. Acts 1855.—Reporter.

† 2 Comp. Laws 1857, chap. 149, repealed 3 Comp. Laws 1929, § 13137 (Stat. Ann. § 26.341).—Reporter.

defendants contended that the law violated the due process provisions of the Constitution. This court said:

"Whatever may be the difficulty of defining this phrase of the Constitution when sought to be applied to other proceedings, when used in relation to those of a *judicial* character, it is evidently, and has been so universally held, intended to secure to the citizen the right to a trial according to the forms of law of the questions of his liability and responsibility, before his person or his property shall be condemned. Judicial action is in such cases imperatively required, and 'implies and includes *actor, reus, judex*—regular allegations, opportunity to answer, and trial according to some settled course of judicial proceedings.'"

In *People, ex rel. Robert Simpson Co.,* v. *Kempner,* 208 N. Y. 16 (101 N. E. 794, 46 L. R. A. [N. S.] 970, Ann. Cas. 1914 D, 169), the relator was a licensed pawnbroker, in possession of two diamond rings as security for a loan. A woman claiming to be the owner of the rings submitted an affidavit to a magistrate upon which a search warrant was issued, the rings taken by the officer and held for production before the magistrate. The court said (p. 19):

"A voluntary and informal notice was given to the relator, by the officer serving the warrant, of the time when the return to said warrant would be made to the magistrate. At the time mentioned the relator appeared by counsel and asserted its right to the possession of said rings and its constitutional authority to have its property rights in said rings and the possession thereof determined in a civil action.

"The magistrate threatened to hear and determine the validity of the relator's alleged lien on the

property taken pursuant to the search warrant, and in the event of its being determined upon such hearing that the relator's alleged lien is invalid that the said property would be delivered to whoever was found to be the owner and entitled to the possession thereof."

After an exhaustive review of the cases, the New York Court of Appeals, in granting a writ prohibiting the proceedings, said:

"It thus appears with reasonable certainty that in England and the American colonies the search warrant was a process used preparatory to the discovery of felons, in preparing evidence against them and to help persons robbed to recover their goods, and not to try the title of or right to the possession of goods and chattels. * * *

"It is a matter wholly between the contending parties and of no direct concern to the State. It must be determined in a civil action, in which the parties are by Constitution entitled to notice and a hearing and, if demanded, to a trial of the issue by jury. (*Modern Loan Co.* v. *Police Court,* 12 Cal. App. 582 [108 Pac. 56].)" *People, ex rel. Robert Simpson Co.,* v. *Kempner, supra,* pp. 21, 25.

"Without the guaranty of 'due process' the right of private property cannot be said to exist, in the sense in which it is known to our laws. The principle, known to the common law before Magna Charta, was embodied in that charter (Coke, 2d Inst. 45, 50), and has been recognized since the Revolution as among the safest foundations of our institutions. Whatever else may be uncertain about the definition of the term 'due process of law,' all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, *and without notice or an opportunity for a hearing.*" *Ochoa* v. *Hernandez,* 230 U. S. 139, 161 (33 Sup. Ct. 1033, 57 L. Ed. 1427).

"The rule is well settled that to constitute due process of law in regard to the taking of property the statute should give the parties interested some adequate remedy for the vindication of their rights (12 C. J., Constitutional Law, § 997, p. 1220); and while it is a proper exercise of legislative power to provide for the destruction of property without notice when the public welfare demands summary action—instances of this kind being the power to destroy diseased meat or decayed fruit, to kill diseased cattle, or to destroy property kept in violation of law which is incapable of lawful use (12 C. J., Constitutional Law, § 999, p. 1224)—nevertheless, where the property involved is what is sometimes termed innocent property, threatening no danger to the public welfare, the owner must be afforded a fair opportunity to be heard (*Modern Loan Co.* v. *Police Court*, 12 Cal. App. 582 [108 Pac. 56]); and it has accordingly been held that to constitute due process *the statute itself* must provide for notice of the time and place of hearing where the parties may present in a regular and orderly manner issues of law and fact (*Ieck* v. *Anderson*, 57 Cal. 251 [40 Am. Rep. 115]). The same rule was declared in *H. Moffat Co.* v. *Hecke*, 68 Cal. App. 35 (228 Pac. 546), where it was held that the essential validity of the law was to be tested not by what has been done under it, but by what may by its authority be done; and where a statute authorizes the taking of private property *but makes no provision for hearing or notice,* either actual or constructive, such defect is not supplied by the voluntary adoption by public officers of rules covering the situation. So in *Security Trust & Safety Vault Co.* v. *City of Lexington,* 203 U. S. 323 (27 Sup. Ct. 87, 89, 51 L. Ed. 204), a case involving the validity of an assessment, it was held that if a statute makes no provision for notice in any form it is not material that as a matter of grace or favor notice may be given. As the court stated, 'it is not what notice, uncalled for by the statute, the taxpayer may have received in a par-

ticular case that is material, but the question is whether any notice is provided by the statute.' Nor can extra official or casual notice, or a hearing granted as a matter of discretion, be deemed a substantial substitute for the due process that the Constitution requires (*Stuart* v. *Palmer*, 74 N. Y. 183 [30 Am. Rep. 289]; *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413 ([35 Sup. Ct. 625, 59 L. Ed. 1027]; *Louisville & Nashville R. Co.* v. *Central Stockyards Co.*, 212 U. S. 132 [29 Sup. Ct. 246, 53 L. Ed. 441].)" *People* v. *Broad*, 216 Cal. 1, 7, 8 (12 Pac. [2d] 941). (Certiorari denied, *California* v. *General Motors Acceptance Corp.*, 287 U. S. 661 [53 Sup. Ct. 220, 77 L. Ed. 570].)

"One who is in the possession of property under a claim of right cannot be deprived of its possession without due process of law. To constitute due process *the statute itself* must provide for notice of a time and place of hearing, giving to the parties an opportunity to present in a deliberate, regular, and orderly manner issues of fact and law. It is essential to the validity of the statute that it furnish the means whereby one may enforce his constitutional rights." *H. Moffat Co.* v. *Hecke*, 68 Cal. App. 35 (228 Pac. 546).

Authorities might be multiplied holding generally that unless a statute in itself provides for the giving of notice and an opportunity for hearing before property or the possession thereof can be taken, it violates the constitutional inhibition against taking property without due process of law. For a general collection of such authorities, see 12 C. J. pp. 1228, 1234; 12 Am. Jur. p. 358.

On this record, the issue, if any, is between the *pawnbroker* and the claimed owner. It may be true that the rights of the *pawner* are not being adjudicated but it cannot be said that the pawner's rights are not affected. Possession of the pawner's property (assuming his ownership) is being taken and

turned over to another whose financial responsibility may be limited to a surety bond expiring in 10 days unless suit is begun. If the instant proceeding is valid, the pawnbroker would doubtless attempt in any suit by the pawner against him to interpose the defense that the property had been taken from him by due process of law. This statute makes no provision for notice to or opportunity for hearing for the *pawner*. Plaintiff attempts to meet this by saying that it is the duty of the pawnbroker to give notice to the pawner. As we have pointed out, the requirement of notice and hearing is not a matter of grace or favor, and cannot be left to the vicissitudes of whim or caprice. The statute itself should provide for notice and opportunity for hearing, not only to the pawnbroker, but to the pawner as the ostensible owner. In *Lloyd* v. *Wayne Circuit Judge*, 56 Mich. 236 (56 Am. Rep. 378), this court held an act * to be unconstitutional which attempted to allow the *ante mortem* probate of a will without notice given to the wife and an opportunity for hearing. Mr. Chief Justice Cooley, writing for the court, said there were some rights which the wife would have as a widow which the husband might take away by will, such as the right to administer his estate:

"The answer of the relator to the objection that the act in question does not provide for notice to the wife, is that the interests of the wife are saved to her, whatever may be the will. If she is dissatisfied with the provisions of the will, she may claim and have the same interests she would have in her husband's estate if no will were made. How. Stat. § 5824.†

---

* Act No. 25, Pub. Acts 1883.—Reporter.

† Reenacted, Act No. 288, chap. 2, § 69, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 16289-2[69]; Stat. Ann. 1940 Cum. Supp. § 27.3178[139]).—Reporter.

"But this seems to be a very insufficient reason for failing to give the wife an opportunity for a hearing."

Plaintiff claims the statute is valid because anyone who claims to be the real owner of the property can resort to another court or other proceedings to establish his right, for example, replevin, or trover. It may be true that the real owner would not be without remedy in another court. In effect, however, the procedure under section 15 has denied him an opportunity for hearing before being deprived of his property.

We do not here have under consideration the question of summary search and seizure of property possessed contrary to penal or *quasi*-penal statute law. It is not here necessary to consider those statutes relating to the possession (unlawful or otherwise) of narcotics, intoxicating liquor, fish and game, counterfeit money, obscene publications, revolvers and other dangerous weapons, lottery tickets and other gaming devices and equipment, and similar property, although the law of many jurisdictions seems to extend the protection of the due process clause to such property. In the case at bar, the property involved does not come within such classifications of prohibited property. We concede that the business of a pawnbroker, susceptible as it is to opportunity for receiving and concealing property from the true owner, is a fit subject for strict regulation. *City of Grand Rapids* v. *Braudy,* 105 Mich. 670 (55 Am. St. Rep. 472, 32 L. R. A. 116). However, our statute law recognizes the business of pawnbroker as being a legitimate business and it is entitled to equal protection of the Constitution. Act No. 273, §§ 15, 16, Pub. Acts 1917, are unconstitutional in that these sections fail to provide for

due notice and an opportunity for hearing. Section 16, by requiring a bond and terminating the liability of the surety on the bond unless suit is begun within ten days, does not afford any reasonable protection.

Reversed for entry of order granting motion to dismiss. This being a question of public interest, no costs are allowed.

SHARPE, C. J., and NORTH, STARR, and BUTZEL, JJ., concurred with BOYLES, J.

WIEST, J. (*for reversal*). I find no occasion to pass upon the constitutionality of the statute.

The property was not seized under the search warrant and, therefore, was not in custody of the law. Without the property in custody of the law the court in this proceeding was without jurisdiction to order the same to be delivered to the complainant or make any order relative to its possession. The order was a nullity and does not bring before this court the constitutionality of the statute. Test of the validity of a statute must rest upon some action under its express provisions:

The statute provides:

"The court before which any property so seized shall be brought, shall cause the same to be delivered to the complainant on his issuing a bond," et cetera. 2 Comp. Laws 1929, § 9698 (Stat. Ann. § 19.595).

Without custody of the property the court could not take any further action.

This court will not pass upon the validity of a statute unless disposition of a case commands it. *People* v. *Quider,* 172 Mich. 280, 289; *Township of Warren* v. *Raymond,* 291 Mich. 426.

The case is here on general appeal and the order entered in the court directing the sheriff of Wayne county to demand from defendant the property and to bring the same before the court is, for the reason herein stated, vacated and held for naught. Defendant will recover costs against plaintiff.

BUSHNELL and CHANDLER, JJ., concurred with WIEST, J.