*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANDRIE INC.,

        Plaintiff-Appellant,

UNPUBLISHED
May 27, 2021

v

No. 351707
Court of Claims
LC No. 17-000164-MT

MICHIGAN DEPARTMENT OF TREASURY,

        Defendant-Appellee.

Before: GLEICHER, P.J., and K. F. KELLY and RIORDAN, JJ.

PER CURIAM.

Andrie, Inc. operates a marine vessel management business. Under its contracts with the vessel owners, Andrie purchases fuel, supplies and equipment for three tug barges. Andrie also supplies the vessels' crews, who operate the tug barges on the Great Lakes. The issue presented is whether Andrie is required to pay use tax on the materials it purchases to maintain and operate the tug barges.

The use tax statute, MCL 205.97(1), imposes tax liability on "[e]ach person storing, using, or consuming in this state tangible personal property . . . ." Andrie contends that it did not "use," "store," or "consume" the items it purchased, but merely passed the materials on to the vessels and the vessel owners. The Court of Claims rejected this argument, finding that Andrie's "ownership-type right or power" over the fuel and supplies brought the purchases within the ambit of the use tax statute. We affirm.

## I. FACTUAL BACKGROUND

Before recounting the relevant facts, we place the parties' dispute in legal context. The use tax act (UTA) imposes a tax on the use, storage, or consumption of personal property in this state:

> There is levied upon and there shall be collected from every person in this state a specific tax . . . for the privilege of using, storing, or consuming tangible personal property in this state at a total combined rate equal to 6% of the price of the property . . . . [MCL 205.93(1).]

-1-

The UTA defines "use" as "the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given." MCL 205.92(b).

The UTA does not further delineate the meaning of "a right or power . . . incident to . . . ownership," and the parties advance conflicting constructions of this phrase. According to Andrie, actual ownership of the materials taxed is essential, and Andrie never owned or "exclusively controlled" them. The department counters that the UTA imposes liability on those who "use, store or consume" property, and that Andrie does all three. By exercising a measure of control over the property, the department asserts, Andrie indisputably fulfilled the statutory definition of "use."

We turn to facts.

For the 2006 through 2014 tax period, Andrie managed two tug barges owned by Lafarge North America. During part of that time, Andrie also managed a tug barge owned by the Occidental Chemical Corporation. Andrie's obligations to the companies were spelled out in Vessel Management, Bareboat Charter, or Affreightment Agreements. The contracts authorized Andrie to purchase fuel, supplies, and equipment needed to operate the vessels within budgets Andrie developed for each tug barge.

In general, Andrie purchased the materials used on the vessels on credit and was reimbursed by the vessel owners for the costs. The owners also paid Andrie a management fee. Under the Lafarge contract, Andrie made purchases in Lafarge's name and then sought payment from Lafarge. After Lafarge remitted the funds, Andrie paid the vendors. The evidence includes invoices showing Andrie as the purchaser and other invoices identifying a combination of "Andrie-Lafarge Midwest" as the purchaser. The arrangement with Occidental was substantially similar.

Andrie claims that it never had "title" to any of the materials it purchased and acted merely as a purchasing agent for the tug barge owners. However, the vendors billed Andrie directly for the materials, and Andrie wrote the checks used to pay them. Andrie also directed the vendors regarding where the materials, fuel, and supplies were to be delivered. Andrie selected the materials it purchased, at its discretion, and did not need prior approval for the purchases. And Andrie operated and maintained the vessels using its own personnel. Leo MacKeller, Andrie's former chief financial officer, described Andrie's role under its contract with LaFarge as follows:

> Andrie provided crews to operate the unit. We purchased items that were needed on the tug and barge, we loaded and unloaded the barge at the plant and at terminals utilizing plant and terminal people. We paid bills on behalf of Lafarge. We prepared monthly cost reports for them as requested. Once a year we helped them put together the budget. We provided a program of computerized maintenance for the tug and barge.

MacKeller summarized: "We supplied a crew to operate the vessels. We purchased whatever items were needed to run the vessels. And we did other management duties in regards to operating them."

In 2010, the department audited Andrie to determine if any difference existed between the reported use tax and the correct use tax for the Lafarge purchases between August 1, 2006 and May 31, 2010. The department found a deficiency, rejecting Andrie's claim that it acted solely as a purchasing agent for the vessel owners and therefore had no use tax liability. The department reasoned that Andrie

> exercises control over the tangible personal property it purchases for vessels it does not own. Andrie is given authority to decide what vendors to purchase from and has control over what and how much is purchased. Andrie directs the vendor where to ship the materials and supplies it purchases and takes possession of them from the vendor. The department's auditors have seen multiple invoices and check stubs as evidence that the vendors bill Andrie directly, Andrie pays the vendor, and then Andrie is reimbursed by LaFarge [sic].

Andrie was liable for the use tax payments, the department concluded.

The department undertook a second use tax audit of Andrie's purchases in June 2014, for the January 1, 2011 through May 31, 2014 tax period. This audit included purchases made on behalf of Occidental, but the conclusions were the same. The department found a use tax deficiency related to the material, supplies, and fuel that Andrie had purchased for its managed-client vessels and rejected Andrie's proposed agency exception to use tax liability. The department explained:

> Andrie exercises control over the tangible personal property it purchases for vessels owned by Occidental Chemical, Andrie is given authority to decide what vendors to purchase from and has control over what and how much is purchased, Andrie directs the vendor where to ship the materials and supplies it purchases and takes possession of them from the vendor. The auditors have seen multiple invoices and check stubs as evidence that the vendors bill Andrie directly, Andrie pays the vendor, and then Andrie is reimbursed by Occidental Chemical. The contract between Occidental Chemical (Owner) and Andrie (Manager) states that "in the procurement from third parties of fuel, supplies, repairs, Vessel parts, . . . , Manager shall contract for such goods and services in Manager's name and upon Manager's credit." [Alteration in original]

The department issued final assessments for both audit periods in the amounts of $3,157,500 and $3,420,018, including interest, respectively.

Andrie challenged the assessments in the Court of Claims, where the parties filed cross-motions for summary disposition. As an agent of Lafarge and Occidental, Andrie asserted, it did not use, consume, or store the fuel, supplies, or materials. Andrie posited that Lafarge and Occidental were the users and consumers of the property under MCL 205.92(b), and thus the proper taxpayers. Lafarge and Occidental purchased the property with their own funds and used it on their own vessels, Andrie emphasized. In contrast, Andrie characterized itself as a mere agent that never obtained title to the goods.

The department asserted that Andrie used, stored, and consumed the property in conformity with its contractual obligation to maintain and operate the vessels, and that the UTA applied. The invoices reflected that Andrie was the actual purchaser of the property, the department stressed. In the department's estimation, Andrie was not a purchasing agent but an independent contractor that necessarily exercised ownership of the property to maintain and operate the vessels.

The Court of Claims granted judgment for the department. Citing caselaw from this Court construing the UTA, the Court of Claims explained that " 'the key feature in determining whether a party exercised a right or power over tangible personal property is whether the party had some level of control over that property.' " (Citation and emphasis omitted). Applying this standard, the court found that Andrie "had 'some level of control' over the property" and therefore "used" it for purposes of the UTA. Andrie "had discretion about purchasing supplies, fuel, and materials and it purchased the same in accordance with that discretion, albeit within the confines of previously approved budgets." Prior approval of the purchases was not required, the Court of Claims noted, substantiating that Andrie "had 'some level of control' over purchasing the materials, supplies, and fuel." The court continued:

> Additionally, and significantly, [Andrie] exercised a degree of control over the fuel, material, and supplies by deciding when, how, and where the same were to be used in operating and maintaining vessels for Lafarge and Occidental. Indeed, Lafarge and Occidental deferred nearly all aspects of operating and maintaining the vessels to [Andrie], given [Andrie's] expertise in tug/barge maintenance and operation. This deference and hands-off approach left [Andrie] free, albeit within the confines of the parties' agreements, to exercise control over the supplies, fuel, and material. [Andrie] was not, contrary to its assertions, a mere purchasing agent of the same. Rather, [Andrie] was intentionally and deliberately afforded deference to operate the vessels as [it] saw fit.

Finally, the court observed that the UTA does not contain an agency exemption, unlike other tax statutes, and that the plain language of the UTA did not permit Andrie to escape use tax liability because it "used" the materials it purchased in an agency capacity.

## II. ANALYSIS

The UTA imposes tax liability on "each person storing, using or consuming in this state tangible personal property." MCL 205.97(1). "Using" means "the exercise of a right or power over tangible personal property incident to the ownership of that property including transfer of the property in a transaction where possession is given." MCL 205.92(b).

Almost a century ago, our Supreme Court succinctly described "an incident of ownership" as "the right to sell or lease or use the property in any lawful way." *Attorney Gen v Pere Marquette R Co*, 263 Mich 431, 433; 248 NW 860 (1933). This description has stood the test of time. In a much more recent case involving whether the execution of a lease for an aircraft constituted a "use" under the UTA, the Supreme Court cited *Pere Marquette* as the foundation for its holding that entering into a lease agreement is an exercise of a right or power incident to ownership. *NACG Leasing v Dep't of Treasury*, 495 Mich 26, 29 n 9; 843 NW2d 891 (2014). Relevant here, the Court explained that "[a] corollary" to the right of a property owner to use or enjoy property "is

the property owner's right to allow others to use his or her property in exchange for consideration." *Id*. at 29. Buttressing its citation of *Pere Marquette*, the Supreme Court quoted this Court's pronouncement in *Eastbrook Homes, Inc v Dep't of Treasury*, 296 Mich App 336, 348; 820 NW2d 242 (2012), that "[i]mportant rights flowing from property ownership include the right to exclusive possession, the right to personal use and enjoyment, the right to manage its use by others, and the right to income derived from the property." *NACG Leasing*, 495 Mich at 29 n 9.

On appeal, the parties spend considerable time and effort debating whether Andrie truly had "control" of the materials it purchased. Their dispute springs from the Court of Claims' reliance on this Court's opinions in *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 70; 880 NW2d 337 (2015), and *WPGP1, Inc v Dep't of Treasury*, 240 Mich App 414, 417; 612 NW2d 432 (2000), in which we focused on whether the taxpayer had control of the commodity at issue (software in *Auto-Owners*, an airplane in *WPGP1*). Control is but one incident of ownership, however. Possession is another. According to our Supreme Court, "possession is one of the most valuable incidents of ownership." *Rassner v Fed Collateral Society, Inc*, 299 Mich 206, 213; 300 NW 45 (1941). See also *Orel v Uni-Rak Sales Co, Inc*, 454 Mich 564, 568; 563 NW2d 241 (1997) (quotation omitted) ("Possession and control are certainly incidents of title ownership[.]").

The evidence in this case establishes that Andrie obtained possession and control over the goods it purchased, purchased the goods in its own name, and used the materials in its vessel management enterprise. And because Andrie managed the day-to-day activities of the vessels and their crews, Andrie also controlled the nature and quantity of the goods it purchased. The statutory definition of "use" presages this situation, as it specifically includes "transfer of the property in a transaction where possession is given." Andrie's activities fit neatly into that concept. Andrie obtains possession of the property by purchasing it—for example, vast quantities of fuel—and according to Andrie, transfers the property to the ship owners after payment has been made. According to Andrie, possession then vests in the owners. That process is consistent with the final clause of the use statute.

Andrie resists this interpretation of the statute, again advancing an agency argument. Rather than a purchaser and user of the goods, Andrie claims to act merely as an agent or "conduit" for the materials without exercising any rights or powers incident to ownership. The facts do not bear out this claim. Andrie buys the fuel, supplies, and parts needed to operate the tug barges. It decides how the materials will be used. Rather than filling the role of a purchasing agent for the vessel owners, Andrie is an independent contractor that utilizes the things it purchases for the benefit of another, and charges a fee for doing so, in addition to obtaining reimbursement.

An agency relationship is "a fiduciary relationship created by express or implied contract or by law, in which one party (the agent) may act on behalf of another party (the principal) and bind that other party by words or actions." *Breighner v Mich High Sch Athletic Ass'n*, 255 Mich App 567, 582-583; 662 NW2d 413 (2003) (quotation marks and citation omitted). "[T]he right of the principal to control the conduct of the agent" is the hallmark feature of this relationship. *Briggs Tax Serv, LLC v Detroit Pub Schs*, 485 Mich 69, 80; 780 NW2d 753 (2010). No evidence supports that the vessel owners controlled Andrie's activities. To the contrary, the owners delegated to Andrie the discretion to purchase that which Andrie and Andrie's crews needed to operate the vessels, and the responsibility to pay the vendors. Andrie obtained possession of everything it purchased and directed how, when, and where its purchases would be used.

Moreover, the UTA imposes tax liability on "each person" using, storing, or consuming the property. Andrie not only used the materials as that term is defined, it "consumed" them according to the ordinary meaning of that word. Andrie consumed the fuel, for example, so that it could operate the tug barges. Andrie was required to "use" and "consume" the fuel and other supplies to fulfill its contracts. The UTA requires nothing more.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Michael J. Riordan