**FLORIDA PAWNBROKERS AND SECONDHAND DEALERS ASSOCIATION, INC., a Florida Corporation, and Happy Hocker Pawnship, Inc., a Florida Corporation, Plaintiffs,**

v.

**CITY OF FORT LAUDERDALE, a Municipal Corporation, Defendant.**

No. 87–7008–CIV.

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

Nov. 17, 1988.

Michael Winer, Fort Lauderdale, Fla., for plaintiffs.

Lindsey A. Payne, Asst. City Atty., Dennis E. Lyles, City Atty., City of Fort Lauderdale, Fla., Fort Lauderdale, Fla., for defendant.

## ORDER

GONZALEZ, District Judge.

Can the state authorize police officers to seize allegedly stolen property from a pawnbroker without notice and hearing? This question is before the court upon the parties' cross motions for summary judgment.

The plaintiffs, Florida Pawnbrokers and Secondhand Dealers Association, Inc. and Happy Hocker Pawnshop, Inc. ("Happy Hocker") are corporations engaged in the pawnbroking business. On three or four occasions, police officers employed by the defendant, the City of Fort Lauderdale, seized pawned property from the plaintiffs' establishments. The City does not dispute that the police officers were acting pursuant to section 715.041(2), Florida Statutes.

Section 715.041(2) reads as follows:

(2) The lawful owner of any stolen property in the possession of a pawnbroker may recover such property by informing any law enforcement agency of the location of such property and providing the agency with proof of ownership of the property, provided a timely report of the theft of the property was made to the proper authorities. Upon the receipt of such proof, any law enforcement officer authorized by the police chief or sheriff, or the delegate thereof, in the jurisdiction where the property is found, may recover the property from the pawnbroker, without expense to the lawful owner thereof, unless the pawnbroker presents evidence of having received proof of ownership of such property by the person who sold it to the pawnbroker or pledged the property as security for a loan. Any property recovered from a pawnbroker pursuant to this section shall be returned to the lawful owner subject to its use as evidence in any criminal proceeding. FLA.STAT.ANN. § 715.041(2) (West 1988) (the "pawnbroker seizure statute").

Happy Hocker brings this action under 42 U.S.C. § 1983 alleging that the pawnbroker seizure statute violates the procedural due process guaranty of the Constitution of the United States. The case is presently

before the court upon Happy Hocker's motion for summary judgment on the issue of the statute's constitutionality. The defendant has countered with its own motion for summary judgment contending, *inter alia,* that the plaintiffs lack a property interest in the seized property and that, even if such an interest exists, the statute complies with constitutional requirements.

To prevail on its motion, Happy Hocker must establish that there is no genuine issue of material fact as to each of the four elements needed in a procedural due process claim: (1) state action, which (2) deprives the claimant of (3) a constitutionally protected interest in liberty or property (4) by procedural means which do not meet Fourteenth Amendment standards. *See Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Craig v. Carson,* 449 F.Supp. 385 (M.D.Fla.1978).

On March 3, 1987, the City of Fort Lauderdale enacted Ordinance Number C–87–17 which essentially incorporated the pawnbroker seizure statute into the municipal code. In the preamble, the City Commission noted that, "the City also desires to facilitate the recovery of stolen property for return to the victims of burglaries and theft." *See* Fort Lauderdale, Florida, Code of Ordinances no. C–87–17, at 1 (March 3, 1987).

■ The procedural safeguards guaranteed in the Fourteenth Amendment are only applicable to state action. *See eg. Kilgore v. McKethan,* 205 F.2d 425 (5th Cir.1953). Section 1983 includes the same requirement by stating that, "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" shall be liable for constitutional deprivations. 42 U.S.C. § 1983 (1987); *also see e.g., Geneva Towers Tenants Org. v. Federated Mortgage Investors,* 504 F.2d 483 (9th Cir.1974).

The city admits that it has used the pawnbroker seizure statute to retrieve property on at least three occasions. *See* Response to Plaintiffs' Motion for Summary Judgment at 1–2. However, the city contends that because "it has simply enforced the provisions of a State Statute", there is no liability under § 1983. *Id.* at 2.

■ While it is true that the city did not enact the pawnbroker seizure statute, it is equally clear that the city's policy of enforcing the statute constitutes state action. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (local governing bodies are directly liable where, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). 436 U.S. at 690–91, 98 S.Ct. at 2035–36.

■ The pawnbroker seizure statute authorizes police officers to seize property in the possession of the pawnbroker upon the *ex parte* application of the putative lawful owner who is expressly exempted from reimbursing the pawnbroker.

As will be seen, this statutory scheme authorizes a due process deprivation of federal constitutional dimensions. In *Fuentes v. Shevin,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), the Supreme Court held that even a temporary loss of possessory rights in chattels is a significant abridgement of Fourteenth Amendment rights. In this case, the pawnbroker is permanently deprived of the pawned property and his lien thereon with no guarantee of any compensation. The Supreme Court's observation in *Ochoa v. Hernandez Y Morales* controls here: "Whatever else may be uncertain about the definition of the term 'due process of law,' all authorities agree that it inhibits the taking of one man's property and giving it to another, contrary to settled usages and modes of procedure, and without notice or an opportunity for a hearing." 230 U.S. 139, 161, 33 S.Ct. 1033, 1041, 57 L.Ed. 1427 (1912).

In defining the extent of the Constitution's protections of "property", the Supreme Court has given the term an expansive scope.

The standard for defining "property" is whether a person has a legitimate claim of entitlement to it. *Board of Regents of*

*State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). In applying this test, the Court also noted, "Property rights, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id.* at 577, 92 S.Ct. at 2709.

█ The Florida legislature has defined the term "pawn", in the sense of a loan of money, as "a written or oral bailment of personal property as security for an engagement or debt, redeemable on certain terms and with the implied power of sale on default." Fla.Stat.Ann. § 715.04(1)(a)(1) (West 1988).

It is evident that under Florida law, pawnbrokers have at least two different property interests in goods sold or pledged for a loan.

First, the pawnbroker has a possessory interest in the pawned goods by virtue of the bailment relationship. *Treasure Cay, Ltd. v. Investors Int'l Constr. Corp.*, 259 So.2d 169 (Fla. 4th DCA 1972). Between the bailee and nonbailor third parties, the bailee has the right to sue for recovery of bailed goods and may obtain damages for conversion of the property. *Lake City Auto Finance Co. v. Waldron*, 83 So.2d 877 (Fla.1955). Indeed, the mere fact of possession of a chattel by a good faith purchaser for value raises a presumption of ownership. *R.S. Evans Motors, Inc. v. Hanson*, 130 So.2d 297 (Fla.1957); *also see Johnson v. Fla. Brewing Co.*, 90 Fla. 148, 105 So. 319 (1925) (bailee has "special property" interest in bailed goods).

It is clear that Florida caselaw recognizes the bailee's interest as a form of property.

Second, Florida law recognizes that the bailee has a lien interest in the bailed goods; specifically, pawnbrokers have a lien interest in their pawned property. Under section 715.04(2), Florida Statutes, the pawnbroker has the power of "sale or disposal" if the pawnee makes no payment on his account for a period of 90 days or, within 60 days of the sale, if the seller has not repurchased the property. Further,

upon default, a sale or disposal of the pawned property "shall vest in the purchaser the right, title, and interest of the seller or borrower and the pawnbroker." *See* Fla.Stat.Ann. § 715.04(3) (West 1988).

In opposition, the defendant predictably argues that pawnbrokers have no property interest in stolen goods acquired from a thief as against a claim by the lawful owner. What this ignores, however, it that such is the result only after there has been a judicial determination of property rights. Until the lawful owner can judicially establish his superior rights, the possessory interest held by the pawnbroker entitles him to continued retention of the property.

The issue is the pawnbroker's right, or lack thereof, to have his claim to the pawned property tested prior to the forced surrender of the goods. *See Wolfenbarger v. Williams*, 774 F.2d 358, 362 (10th Cir. 1985) (issue of whether pawnbroker will lose her rights in stolen property to lawful owner is irrelevant to due process claim); *Wacksman v. Harrell*, 174 Ohio St. 338, 189 N.E.2d 146 (1963) (same).

█ The Supreme Court has recognized that mere possessory rights are protected property. In *Fuentes*, the Court observed that as long as there was "some dispute" as to the right to continued possession, a possessor is entitled to due process. 407 U.S. at 87 n. 17, 92 S.Ct. at 1997 n. 17.

The Supreme Court has also recognized a lien as Fourteenth Amendment "property". *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1934) (a mortgagee's security interest in real estate is private property protected by the due process safeguards of the Fifth Amendment); *Armstrong v. United States*, 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) (a lien on personal property is "property" for due process purposes).

The City of Fort Lauderdale contends that even though the statute's procedural safeguards are "very little", they are constitutionally adequate. *See* Response at 4. The pawnbroker is provided with an award of restitution from the thief if he is convict-

ed; the lawful owner of the stolen property can only invoke the statute's recovery provisions if a proper theft report was made and if sufficient proof of ownership was presented; and the pawnbroker is allowed to retain the pawned goods if he can show that he obtained proof of ownership from the pawnee.

The Supreme Court has defined the minimum constitutional dictates of due process. In *Fuentes*, Justice Stewart observed that, "For more than a century the central meaning of procedural due process has been clear: 'Parties whose rights are affected are entitled to be heard; and in order that they may enjoy the right they must first be notified.'" 407 U.S. at 80, 92 S.Ct. at 1994.

■ Although the Fourteenth Amendment absolutely guarantees notice and a hearing, the *form* and quantity of these procedures is relative subject to a consideration of the competing interests. In determining how much procedure is due, there are three controlling factors: (1) the nature of the constitutional interest being deprived, (2) the risk of an erroneous determination by state procedure and the value of added process, and (3) the public and governmental interests at stake. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901, 47 L.Ed.2d 18 (1976); *Haitian Refugee Center v. Smith*, 676 F.2d 1023, 1040 (5th Cir. Unit B 1982).

The city's enforcement of the pawnbroker seizure statute deprives Happy Hocker of constitutionally significant possessory and lien interests, the value varying with the market price of the property seized.

Nor does the statute protect against arbitrary action by police officials or present a process with an acceptably low risk of erroneous deprivations.

The last consideration is the public and governmental interests at stake. The state has a strong interest in regulating the business of pawnbroking. As noted in *Rassner v. Federal Collateral Soc.*, 299 Mich. 206, 300 N.W. 45, 52 (1941), "We concede that the business of a pawnbroker, susceptible as it is to the opportunity for receiving and concealing property from the true owner, is a fit subject for strict regulation."

While fighting crime is an important governmental interest, the preservation of constitutional liberties is of paramount public concern. As Justice Stewart stated, "the prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Fuentes*, 407 U.S. at 81, 92 S.Ct. at 1994.

Although it is true that the form of process due is a fluid concept, the "fundamental, indispensable protections of procedural due process are (1) a hearing (2) before an impartial decisionmaker, after (3) adequate notice of the reason for the deprivation, with (4) an opportunity for the individual to present his case." *Craig v. Carson*, 449 F.Supp. 385, 390 (M.D.Fla.1978).

Other courts have invalidated similar statutes which provided for seizure of stolen property from pawnbrokers without notice or hearing. In *Wolfenbarger v. Williams*, 774 F.2d 358 (10th Cir.1985), the Tenth Circuit held that a statutory scheme which only provided for a postdeprivation hearing was constitutionally infirm. Of course, here, the statute does not provide for *any* hearing. The Supreme Court of Michigan reached the same result in *Rassner v. Federal Collateral Soc.*, 299 Mich. 206, 300 N.W. 45 (1941), by invalidating a statute which did not provide for notice to the pawnbroker or provide a predeprivation hearing. Finally, in *Wacksman v. Harrell*, 174 Ohio St. 338, 189 N.E.2d 146 (1963), Ohio's highest court found a statute unconstitutional for allowing police officials to seize stolen property from pawnbrokers without a predeprivation hearing. In the present case, not only is the property taken from the pawnbroker, but the police are then authorized to turn it over to the alleged lawful owner.

Upon consideration of the above, it is clear that the pawnbroker seizure statute does not provide minimum procedural due process. The statute does not require any notice to the pawnbroker or the pawnee. The alleged lawful owner is not required to

post a bond to protect the pawnbroker from meritless claims. Most importantly, there is no hearing before an impartial decisionmaker. While the defendant may contend that the pawnbroker's opportunity of a "hearing" before the police officer satisfies due process, few would hold that a police official seizing pawned property is an impartial decisionmaker possessed of the legal training sufficient to resolve conflicting claims to property. It is accordingly

ORDERED AND ADJUDGED as follows:

1. The defendant's cross-motion for summary judgment is hereby DENIED.

2. The plaintiffs' motion for summary judgment is hereby GRANTED. Section 715.041(2) of the Florida Statutes is hereby declared UNCONSTITUTIONAL as repugnant to the due process clause of the Fourteenth Amendment to the Constitution of the United States.

3. The defendant, City of Fort Lauderdale, and its officers, agents, and employees including the police department, are hereby ENJOINED AND RESTRAINED from enforcing Section 715.041(2), Florida Statutes.

4. If plaintiffs seek relief for damages under 42 U.S.C. § 1983, or for costs and attorneys's fees pursuant to 42 U.S.C. § 1988, they shall file an appropriate motion with supporting legal memorandum within 15 days of the date of this order or shall be deemed to have waived said claims.

DONE AND ORDERED.