### SURPLUS STORE AND EXCHANGE, INC., Plaintiff–Appellant,

v.

### CITY OF DELPHI, Defendant–Appellee.

### No. 89-3494.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 22, 1990.

Decided April 5, 1991.

Carolyn S. Holder, Holder & Davis, Lafayette, Ind., for plaintiff-appellant.

William W. Kurnik, Kurnik, Cipolla, Stephenson & Barasha, Arlington Heights, Ill., James S. Stephenson, Stephenson & Kurnik, Indianapolis, Ind., for defendant-appellee.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and WILL, Senior District Judge.[*]

BAUER, Chief Judge.

Possession may be "rather more than nine points of the law," *Corporation of Kingston-upon-Hull v. Horner,* [1774] Lofft 576, 591 (Lord Mansfield), but, as this case demonstrates, nine points is not always enough—especially if the holder of

---

[*] The Hon. Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, is sitting by designation.

the tenth point is assisted by a police officer.

At stake here are a couple of gold rings worth about $1,100. On May 26, 1988, Patrolman Steve Mullin of the Delphi City Police Department spotted the rings at the Surplus Store and Exchange ("Surplus") on Main Street in Lafayette, Indiana. Mullin believed that the rings had been stolen from their true owner, Joyce Fowler. Surplus claimed (and still claims) that it obtained the rings in a bona fide purchase. Undaunted by this claim, Officer Mullin seized the rings, but not before signing a receipt that read: "The above items are released with the understanding that at this time [Surplus] has a vested interest in them and disposition [of] such is to be made by a court of law." Officer Mullin promptly disregarded the receipt and, later that same day, released the rings to Ms. Fowler. No notice of this release was given to Surplus, nor was any hearing or other proceeding held before Mullin gave away the rings.

This incident spawned a suit by Surplus in federal district court under 42 U.S.C. § 1983 ("§ 1983").[1] Surplus named as a defendant only Mullin's employer, the City of Delphi ("Delphi"). In its brief, broadly-drafted complaint (and amended complaint), Surplus charged that Mullin violated its fourth and fourteenth amendment rights by seizing the rings and giving them to Fowler, "the purported owner." The fourteenth amendment claim—the heart of Surplus' complaints—sounds in procedural due process; to wit, Mullin's actions deprived Surplus of its property interest in the rings "without proper judicial hearing." Surplus alleged further that Mullin took these actions "under color of State law," citing in support three Indiana statutes: Ind.Code §§ 35–33–5–5, 35–43–4–4(h), and 35–43–4–5 (1986 Supp.). The first provision states that all items of property seized by a law enforcement agency "shall be securely held" by the agency, with the exception that, if the item is "property obtained unlawfully from its owner," it may be re-

turned to the owner before trial "in accordance with [Ind.Code § ] 35–43–4–4(h)." Ind.Code §§ 35–33–5–5(a) & (b). The second provision, in turn, allows a law enforcement agency "that is holding as evidence property over which a person is alleged to have exerted unauthorized control or to have otherwise obtained unlawfully" to return the property to its owner, if the agency follows certain procedures (e.g., photographing the item, obtaining a receipt from the owner, etc.). Ind.Code § 35–43–4–4(h). The third provision, which is found in the "Defenses" section of the "Theft; Conversion" chapter, shields from criminal liability a person who attempts to return stolen personal property to its owner. Ind.Code § 35–43–4–5(d). None of these statutes provide for a judicial hearing or other proceeding before the subject property is returned to its owner. Finally, Surplus' complaints allege that Mullin was acting "in his capacity as an employee of the City of Delphi."

Delphi moved to dismiss both the original and amended complaints, arguing that Indiana tort law provides an adequate remedy for Surplus' alleged injury. Surplus proffered a lengthy response to Delphi's motion. In light of the briefing that had taken place, the district court treated Delphi's motion as one for summary judgment under Fed.R.Civ.P. 56 and, on October 5, 1989, entered a memorandum opinion dismissing Surplus' complaint. (A judgment order to the same effect followed six days later.) The court's dismissal was "without prejudice to enable the plaintiff to pursue whatever claims may be available under the law of Indiana and in the courts of Indiana." From this final order, Surplus brought a timely appeal.

There are so many problems with this lawsuit, it is hard to know where to begin. Indeed, this fact is well-illustrated by the district court's opinion, which touches on a number of possible rationales for the dismissal of Surplus' action. The district court seems ultimately to rely upon the

---

**1.** The district court had jurisdiction over this suit under 28 U.S.C. §§ 1331, 1343(a)(3), & 1343(a)(4).

ground that Indiana tort law provides an adequate remedy, following *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). *See generally Guenther v. Holmgreen*, 738 F.2d 879, 882 (7th Cir.1984), *cert. denied*, 469 U.S. 1212, 105 S.Ct. 1182, 84 L.Ed.2d 329 (1985) (discussing and applying *Parratt*'s teaching that "a victim of a property or liberty deprivation who has recourse to an adequate state remedy has not been denied 'due process of law' "). We choose a different tack.[2]

As mentioned above, Surplus has sued only the municipality of Delphi. "[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). *See also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816–20, 105 S.Ct. 2427, 2432–35, 85 L.Ed.2d 791 (1985); *Monell v. New York Dept. of Social Services*, 436 U.S. 658, 690–95, 98 S.Ct. 2018, 2035–38, 56 L.Ed.2d 611 (1978); *Leahy v. Board of Trustees*, 912 F.2d 917, 922 (7th Cir.1990) ("Proximate causation between the municipality's policy or custom and the plaintiff's injury must be present.") (quoting *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir.1985)). Our search for a Delphi policy that meets this requirement begins with Surplus' pleadings, but they provide no help. In its complaints, Surplus not only fails to point to a specific Delphi policy or custom directly and causally linked to the alleged deprivation, but fails altogether to refer to any sort of Delphi policy or custom linked in any way to the alleged deprivation. In fact, the sole mention of Delphi is a reference to its employment of Officer Mullin, which is both revealing and dooming: the former because, under Surplus' allegations the only thing that Delphi did or failed to do that could possibly make it culpable for the constitutional violation is employ Officer Mullin, and the latter because that very ground for municipal liability has been explicitly rejected by the Supreme Court. *See Harris*, 489 U.S. at 385, 109 S.Ct. at 1203 ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983.") (emphasis in original) (discussing *Monell*, 436 U.S. at 694–95, 98 S.Ct. at 2037–38); *Tuttle*, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433 (municipal liability cannot be imposed "merely because of an employment relationship") (also discussing *Monell*).

Surplus' failure to allege in its pleadings facts which, if true, would meet the municipal policy requirement is itself a sufficient ground on which to dismiss Surplus' § 1983 claim. *See Leahy*, 912 F.2d at 922 (citing cases). Moving beyond Surplus' pleadings and examining its briefs in this court, however, we discover that Surplus believes that it has satisfied the municipal policy requirement (as well as the separate "under color of state law" requirement) by citing in its complaints three particular Indiana statutes that authorized Officer Mullin to seize

---

**2.** Which is not to say that we disagree with the district court's conclusion regarding the adequacy and availability of relief under Indiana tort law. In fact, we ordered subsequent briefing on this question after oral argument. After reviewing the supplemental briefs and the Indiana case law, it appears that Indiana tort law may fail to provide an adequate remedy. *See* Ind. Code § 34–4–16.5–3(6), (7), & (8) (provisions of the Indiana Tort Claims Act granting immunity to governmental entities, and employees acting within scope of employment, if the injury or loss resulted from "the performance of a discretionary function," "the adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment," or "an act or omission performed in good faith and without malice under the apparent authority of a statute which is invalid"). *But see* 21 Indiana Law Encyclopedia *Municipal Corporations* § 410 ("[A] municipal corporation is liable for injuries resulting from the negligence of officers, agents or employees while engaged in the performance of its ministerial ... functions...."); *City of Hammond v. Cataldi*, 449 N.E.2d 1184, 1186 (Ind.App.1983). We need not, and do not, resolve this issue either way.

and dispose of the rings.[3] These statutes, Surplus argues, are unconstitutional because they fail to require a pre-disposition hearing. Surplus then attempts to make the conceptual leap from these Indiana statutes to Delphi city policy by arguing that Delphi has a "policy" of enforcing the statutes.[4] In other words, it is Surplus' contention that Delphi's decision simply to enforce these "unconstitutional" Indiana statutes was a "municipal policy" that "caused" the wrongful deprivation of Surplus' property interest in the rings, and thus the requirements of *Monell* and *Harris, et al.* are satisfied.

To formulate this argument is to see its fatal flaws. First, consider what Surplus has *not* alleged. (The meritless suggestion rejected *supra* in note 4 aside), Surplus has not claimed that the alleged constitutional violation was caused by a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by" Delphi that was itself unconstitutional. *See Sims v. Mulcahy*, 902 F.2d 524, 541–42 (7th Cir.1990) (quoting *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir.1990) (quoting in turn *Monell*, 436 U.S. at 690, 98 S.Ct. at 2035)). Nor has Surplus claimed that the constitutional violation was caused by an "entrenched practice with the effective force of a formal policy" that Delphi allowed to develop, which practice or custom

was itself unconstitutional. *See Gray v. Dane County*, 854 F.2d 179, 183–84 (7th Cir.1988). Nor has Surplus argued that Delphi, as a matter or policy or custom, enforces the law in a manner or method that caused the constitutional violation, which differentiates Surplus' claim from the one class of claims in which municipal liability can lie absent a showing of a municipal policy or custom that is itself unconstitutional: the "inadequate training" or "inadequate procedures" cases. *See Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1096–1104 (7th Cir.1990) (discussing and applying "inadequate training" and "municipal policy" standards from *Harris* and *Tuttle* to claim of inadequate pre-employment investigation of police officer's background); *Sims*, 902 F.2d at 542–45 (applying same to claim against city for failure to monitor and investigate behavior of police during searches). Instead, Surplus argues that Delphi properly can be held liable for the deprivation of its property because Delphi has a "policy" of allowing or instructing its police officers to enforce the challenged statutes.

It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. If the language and standards from *Monell*

3. We note briefly that, from our reading of the challenged Indiana statutes, it is not even clear that they "authorized" the whole of Officer Mullin's conduct. Sections 35–33–5–5(a) & (b) and 35–43–4–4(h) deal only with the disposition of property already in police custody, and thus do not, at least on their face, authorize Mullin's seizure of the rings. Section 35–43–4–5(d) has no special applicability to police officers or agencies, but simply shields people who try to return stolen property to its owner from liability for the crimes of theft and conversion.

4. In its reply brief, Surplus also makes the related, but slightly different, argument that all cities can be charged with "adopting" as a matter of policy all state laws that they do not ignore; i.e., "Indiana statutes are a source of policy for the municipalities acting under them." Appellant's Reply Brief at 6. This argument would render meaningless the entire body of precedent from the Supreme Court and this court that requires culpability on the part of a municipality and/or

its policymakers before the municipality can be held liable under § 1983, and would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors—here, the Indiana legislature. Thus, it is wholly without merit. Further, counter to Surplus' suggestion, this argument was not accepted by the Tenth Circuit in the *Wolfenbarger* cases. *See Wolfenbarger v. Williams*, 774 F.2d 358 (10th Cir.1985) ("*Wolfenbarger I*"); *Wolfenbarger v. Williams*, 826 F.2d 930 (10th Cir.1987) ("*Wolfenbarger II*"). In these cases, both the seizure and subsequent disposition of the stolen merchandise at issue was done by city police officers pursuant to express directives from the district attorney to the chief of police—directives that mandated procedures different from Oklahoma law, which provided for a pre-disposition hearing before a magistrate. *See Wolfenbarger I*, 774 F.2d at 365; *Wolfenbarger II*, 826 F.2d at 931. Thus, the fault for any due process violation occasioned by these procedures properly lay with the local governmental actors and entities.

are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality. *Cf. Tuttle,* 471 U.S. at 823, 105 S.Ct. at 2436:

> Obviously, if one retreats far enough from a constitutional violation some municipal "policy" can be identified behind almost any such harm inflicted by a municipal official.... But *Monell* must be taken to require proof of a city policy different in kind from [the "policy" of establishing a police force] before a claim can be sent to a jury on the theory that a particular violation was "caused" by the municipal "policy." At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.

*See also Thompson v. Duke,* No. 84 C 5082, slip op. at 5 (N.D.Ill. Jan. 4, 1988) [available on WESTLAW at 1987 WL 33188] (rejecting plaintiff's claim that county was liable under § 1983 for "blindly following" unconstitutional state parole board procedures on the ground that the county's "practice of simply following state law is not the promulgation or maintenance of a practice which directly causes injury" as *Monell* requires), *aff'd,* 882 F.2d 1180, 1187 (7th Cir.1989).

All that remains is to distinguish two cases on which Surplus places great reliance for, among other things, the municipal policy requirement: *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), and *Florida Pawnbrokers and Secondhand Dealers Ass'n, Inc. v. City of Fort Lauderdale,* 699 F.Supp. 888 (S.D.Fla.1988) (*"Pawnbrokers I"*). In *Logan,* the Court held that a state commission could not destroy a complainant's recognized property right without a pre-deprivation hearing when there existed an "established state procedure" that should—and could easily—have provided such a hearing. In such a case, the Court stated, the mere existence of a post-deprivation hearing or remedy was constitutionally inadequate. *Id.* 455 U.S. at 434–37, 102 S.Ct. at 1156–59. For all it teaches concerning procedural due process, *Logan* is silent as to *Monell*'s municipal policy requirement—simply because it did not involve a § 1983 claim against a municipality. Thus, Surplus' reliance on *Logan* for its "official policy" argument is misplaced.

In *Pawnbrokers I,* the district court declared Florida's pawnbroker seizure statute violative of due process and enjoined Fort Lauderdale from enforcing it. Among the many differences between that case and this case are the following: 1) the Florida statute at issue, Fla.Stat.Ann. § 715.041(2) (West 1988), specifically authorized both the seizure of stolen property from pawn shops and the return of the property to its owner, *compare supra* note 3; and 2) Fort Lauderdale, by ordinance, expressly incorporated the statute into the municipal code, adding a preamble that stated, "the City also desires to facilitate the recovery of stolen property for return to victims of burglaries and thefts." *See Pawnbrokers I,* 699 F.Supp. at 890. *See also Florida Pawnbrokers and Secondhand Dealers Ass'n, Inc. v. City of Fort Lauderdale,* 711 F.Supp. 1084, 1085 (S.D.Fla.1989) (*"Pawnbrokers II"*) ("The city here did not merely enforce the state statute. As held in the prior order of this court, the city of Fort Lauderdale had a policy of using the statute as one part of a comprehensive plan for dealing with the potential of the pawnbroking business as a market for stolen property."). Overlooking this second difference, Surplus seizes on the following paragraph in *Pawnbrokers I* in support of its argument that the municipal policy requirement was satisfied in that case by mere enforcement:

> While it is true that the city did not enact the pawnbroker seizure statute, it is equally clear that the city's policy of enforcing the statute constitutes state action. *Monell,* [436 U.S. at 690–91, 98 S.Ct. at 2035–36] (local governing bodies are directly liable where, "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").

699 F.Supp. at 890. The statement itself refers only to the state action requirement and, viewed in that light, is neither troublesome nor helpful to Surplus. If, however,

the court by this statement meant to say that simply enforcing state law satisfies the municipal policy requirement of *Monell*—which is by no means clear, as Fort Lauderdale officially adopted and promulgated the state pawnbroker statute and the policy behind it—then we believe that the court fundamentally misunderstood the municipal culpability requirement explicated in *Monell, Harris,* and *Tuttle.* We will not, as Surplus invites, follow in those footsteps.

Surplus argues that it had a "superior claim" to the rings as a result of a "bona fide purchase," and that it was unconstitutionally deprived of this property interest by Officer Mullin's state-law-authorized actions. Whatever the merit of its claim on the rings, Surplus cannot hold the City of Delphi liable under § 1983 for this alleged due process violation unless a policy or custom attributable to Delphi caused the violation; in other words, the fault for the deprivation must lie with Delphi itself, not with Officer Mullin or with the Indiana statutes. Surplus has neither alleged facts that, if true, would meet this municipal policy requirement, nor requested leave to do so. Accordingly, we conclude that Surplus has waived any such contention. The district court's judgment dismissing Surplus' complaint is

AFFIRMED.