O’Neill, J.
This case is before the Court on cross-motions for summary judgment. The plaintiff, Town of Bourne, brought the initial action seeking an injunction prohibiting the defendants, Joseph and Sarah Polito, from violating the provisions of G.L. c. 54, §65, by exhibiting political signs upon their property located within 150 feet of a polling place on election day. The defendants counterclaim for damages under the federal and state civil rights laws, 42 U.S.C. (1983), and G.L. c. 12 §ll(i), respectively as a result of the Town’s efforts to enforce the statute during the elections of November 6, 1990 and March 6, 1991.
For reasons set forth in the body of this opinion, the Court rules that G.L. c. 54, §65, as applied to political signs upon private property within 150 feet of a polling *12 place on election day is unconstitutional. The Court also rules that the Town’s action in enforcing a state statute did not violate either federal or state civil rights laws.
DECISION
The parties agree that the record before the Court contains all of the facts necessary for a decision on the issues presented apart from any issue of damages. The Town may now perceive a need to supplement the record on the basis of this decision. The Court would entertain such a motion.
General Laws, c. 54, §65, provides, in pertinent part:
At an election of state or city officers and of town officers . . . The presiding election officer at each polling place shall. . . [post required instructional materials and sample ballots] and no other poster, card, handbill, placard, picture or circular intended to influence the action of the voter shall be posted, exhibited, circulated or distributed in the polling place, in the building where the polling place is located, on the walls thereof, on the premises on which the building stands, or within one hundred and fifty feet of the building entrance door to such polling place.
The Town argues that the so-called zone of neutrality law is constitutional based upon the decision of the United States Supreme Court in Burson v. Freeman, 112 S.Ct. 1846 (1992), and to a lesser extent upon a 1986 Opinion of the Secretary of State in the case of Town of Hardwick v. Withold Mikelk, Worcester Superior Court, Civil Action No. 35882. Said Opinion, while not contained within the motion documents may be found as an exhibit to the complaint. The Secretary’s letter states, in pertinent part:
The Secretary regards consistent enforcement of this statute as important, to preserve a zone of neutrality in which voters can collect their thoughts immediately before voting, free of distraction or interference. Since neither this purpose nor the statute’s express terms distinguish between public and private property, the Secretary has consistently interpreted this statute to apply to private property. The Secretary commends the town for initiating this action to enforce the statute.
The letter goes on to define the 150-foot parameter and indicates that the Secretary’s interpretation of his own regulation is entitled to deference. Without taking serious issue with the letter’s contents the Court notes that the opinion does not address the manner in which a political sign on private property within the prohibited zone interferes with the competing right of the freedom to vote. The 1986 letter is helpful to the Town in defense of defendants’ counterclaims as an additional raison d’etre for taking action to remove the offending signs. However, the Court finds the Town’s reliance upon the Supreme Court decision to be misplaced.
In Burson v. Freeman, supra, a plurality of the U.S. Supreme Court overturned a Tennessee Supreme Court decision which had struck down a statute prohibiting political signs within 100 feet of a polling place. The Court noted that the statute implicated three First Amendment concerns: regulation of political speech, regulation of speech in a public forum, and regulation based on the content of the speech and “as a facially content-based restriction on political speech in a public forum [the statute] must be subjected to exacting scrutiny: The State must show that the regulation is necessaiy to serve a compelling state interest and that it is narrowly drawn to achieve that end." Id. at 1850-18. The Court noted the “serious issues . . . that force us to reconcile our commitment to free speech with our commitment to other constitutional rights . . . [and] this case presents us with a particularly difficult reconciliation; the accommodation of the right to engage in political discourse with the right to vote — a right at the heart of our democracy.” Id. at 1851.
Tennessee argued that it had a compelling state interest in protecting the rights of its citizens to vote freely for the candidates of their choice and in protecting the right to vote in an election conducted with integrity and reliability, and the Court ruled “the interests advanced by Tennessee are obviously compelling ones.” Id. The Court observed “a State has a compelling interest in protecting voters from confusion and undue influence... [and it] indisputably has a compelling interest in preserving the integrity of its election process . . . [and] the Court thus has upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the election process itself.” Id. at 1850-52.
The Court then involved itself in an extended historical perspective of the voting process and ultimately concluded that the statute as drawn is constitutional. While the Court recognized the right of the State to assure that voters are protected from confusion and undue influence, the parameters of that right are very narrow; “To survive strict scrutiny a State must do more than assert a compelling state interest ... it must demonstrate that its law is necessary to serve the asserted interest.” Burson, S.Ct. at 1852.
The Supreme Court further recognized that a valid “as applied” challenge would call for a limiting construction of the regulation.[2]
The plurality opinion was followed by a strongly worded dissent. The dissenting opinion concludes, “Although we often pay homage to the electoral process, we must be careful not to confuse sanctify with silence. The hubbub of campaign workers outside a polling place may be a nuisance, but it is also the sound of a vibrant democracy.”
*13 In silencing that sound, Tennessee, “trenches upon an area in which the importance of the First Amendment protection is at its zenith.” (Citation omitted.) For that reason, Tennessee must shoulder the burden of demonstrating that its restrictions on political speech are no broader than necessary to protect orderly access to the polls. It has not done so."
Applying the principals enunciated in Burson, supra to the present case, the issue presented is whether the plaintiffTown has demonstrated that G.L. c. 54, §65 as applied to the presence of political signs on private property within the zone of neutrality creates confusion or undue influence upon prospective voters. The Town has failed to produce one iota of evidence at any level of hearing on this issue.
The historical analysis by the Supreme Court reveals a persistent battle against two evils: voter intimidation and election fraud. This Court’s analysis does not consider the issue of fraud.
Any voter who has approached a polling place on the day of a hotly contested election well knows the exuberance of campaign workers, and the amount of material that one is asked to take and consider. The Court readily concedes that there is a compelling state interest in regulating such conduct to avoid potential voter intimidation. Conversely, the right of political speech on election day implicates the “importance of the First Amendment protection at its zenith.” Burson, S.Ct. at 1867.
In this context, the Court must rule whether those silent sentinels, political signs, upon private property within the prohibited zone would so confuse or intimidate voters that the property owners right of political discourse must be forfeited. The burden is upon the government to show that a regulation is necessaiy to serve a compelling state interest and that it is narrowly drawn to achieve that end. Perry Education Association v. Perry Local Educators Association, 460 U.S. 37, 45, 103 S.Ct. 948-55 (1983). The Supreme Court stated in Boos v. Barry, 485 U.S. 321 (1988), that a content based restriction on political speech in a public forum must be subjected to the most exacting scrutiny.
In conclusion, the Court fully recognizes the principle enunciated in Burson, supra. The Court finds that the plaintiff town of Bourne has failed to indicate, prove, point out, or even suggest how a political sign on private property creates undue influence upon a prospective voter. Therefore, as applied to Mr. and Mrs. Polito, the statute unconstitutionally abridges their right of free speech and is, therefore, unconstitutional.
The Court notes that a temporary restraining order was previously issued in part on the basis that the . restriction was minimal as to time and space. Simply put, the signs could exist at any time other than election day and signs could be placed in other portions of the property not within the restricted zone. However, the importance of the right to exercise political speech upon election day has long been recognized. In Mills v. Alabama, 384 U.S. 214 (1966), the Court struck down an Alabama law which banned election day editorial endorsements. In his dissent, in Burson, supra, Stevens, J., notes at p. 1866, “To the contrary, we recognize that it is precisely on election day that advocacy and campaigning can be the most effective.”
Further, the restriction on location of the signs imports a finding that there is an effect upon a prospective voter depending on the distance from the polling place. Again, there is no evidence to support that position. In light of this analysis, the Court cannot say that the regulation was a de mini-mis violation and, therefore, was a violation of an unprotected right.
The brief on behalf of the Politos sets forth an interesting argument that the Massachusetts Declaration of Flights affords greater speech and property protection than does the federal Constitution because of a difference in language between the First Amendment and that of Article 16 of the Declaration of Rights. The Court notes the difference but declines to rely upon that distinction because the Supreme Court decision in Burson, supra supports the conclusions reached by the Court in this case.
The Court now turns to the counterclaim of Joseph J. Polito. The Court will not review extensively the conduct which brings us to this point. By his own admissions in his deposition, Mr. Polito was extremely confrontational in his dealings with the Town officials. Conversely, the Town officials exercised great restraint and are to be commended for the manner in which they dealt with Mr. Polito’s tirades. The Town was seeking to enforce a State statute. In an effort to do so, the Town first sought a criminal complaint in the District Court which resulted in a hearing and an agreement between the parties as to future course of conduct. Thereafter, in a subsequent election, the Town again requested that political signs be removed and eventually sought a preliminary injunction in the Superior Court which was granted ex parte and renewed after hearing. Again, the Town sought to enforce a State statute through legal means. The Court finds absolutely no basis for any valid claim that the Town violated the provisions of the federal or State civil rights statutes.
The town of Bourne cannot itself be held liable for violation of the federal civil rights law unless an official government policy is shown to have been promulgated to deny Mr. Polito his first amendment rights. Monell v. Dep’t. of Social Services, 436 U.S. 658, 694 (1978). There is obviously no such policy demonstrated in this case. The Town was merely enforcing state law something which, without more, cannot make the Town a “convenient receptacle of liability” solely in the event state law is declared unconstitutional. Surplus Stores *14 and Exchange, Inc. v. City of Delphi, 928 F.2d 788, 791-92 (7th Cir. 1991).
Similarly, the enforcement of state law by the Town does not involve a violation of the person’s rights by threat, intimidation or coercion. Longval v. Comm’r. of Correction, 404 Mass. 325, 333 (1989); Pheasant Ridge Associates, Ltd. Partnership v. Burlington, 399 Mass. 771, 781 (1987). The holding of Batchelder v. Allied Stores, 393 Mass. 819, 823 (1985), is not controlling. In that case, the uniformed security officer in a private shopping mall ordered the plaintiff to stop soliciting and distributing his political handbills. This is far removed from the lawful enforcement of a state statute.
ORDER
Based upon the foregoing, it is hereby ORDERED that summary judgment enter that the provisions of G.L. c. 54, §65, as applied to political signs on private property within 150 feet of a polling place is unconstitutional and, therefore, the plaintiff. Town of Bourne’s application for a permanent injunction is DENIED. It is further ORDERED that summary judgment enter for plaintiff/defendant-in-counterclaim. Town of Bourne, against the defendants/plaintiffs-in-counterclaim, Joseph and Sarah Polito, on any counterclaims alleging violation of the federal and State civil rights statutes. Judgment to enter accordingly.

 “At oral argument petitioner denied that the statute would reach this latter inadvertent conduct since this would not constitute display of campaign material. In any event these arguments are "as applied" challenges that should be made by an individual prosecuted for such conduct If successful, these challenges would call for a limiting construction rather than a facial invalidation. In the absence of any factual record to support respondent's contention that the statute has been applied to reach such circumstances, we do not entertain the challenges in this case." (The conduct alluded to was the prosecution of an individual for driving by in an automobile with a campaign bumper sticker.) Burson, S.Ct. fn. 13 at p.1857.