Luwanna HOOPER, Plaintiff,

v.

CITY OF DETROIT; John Doe, Police Officer for the City of Detroit; and John Doe, Police Officer for the City of Detroit, Defendants.

No. Civ.A.98–40297.

United States District Court,
E.D. Michigan,
Southern Division.

May 17, 1999.

Carl L. Collins, III, Detroit, MI, for plaintiff.

Karie H. Boylan, Detroit City Law Department, Detroit, MI, for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CITY OF DETROIT'S MOTION FOR SUMMARY JUDGMENT

GADOLA, District Judge.

Presently before the Court is defendant City of Detroit's motion for summary judgment filed March 22, 1999. Plaintiff Luwanna Hooper responded to the instant motion on April 28, 1999. Plaintiff initiated the instant action with the filing of her complaint on August 6, 1998. Plaintiff claims that defendant City of Detroit violated her due process rights under the Fourteenth Amendment and pursuant to 42 U.S.C. § 1983 because the officers failed to provide her with notice and an opportunity to be heard prior to depriving her of property, i.e., plaintiff's pit bull terrier.[1] Oral argument on defendant City of

---

1. In an order issued September 3, 1998, this Court remanded plaintiff's pendent state law

Detroit's motion for summary judgment was held May 5, 1999.

For the reasons set forth below, this Court will grant defendant City of Detroit's motion.

## I. Factual Background

According to defendant, during the afternoon of January 15, 1998, a woman named Lillian Hunt left her home to visit her elderly sister who lived two blocks away when she was bitten by plaintiff's pit bull terrier running loose in the neighborhood. The dog's teeth broke the surface of the skin on Ms. Hunt's leg and the wound required stitches. *See* Depo. of Lillian Hunt, attached as Exh. F to defendant's brief. After biting Ms. Hunt, the animal allegedly returned to plaintiff's front porch at 13536 Goddard Street, Detroit, Michigan.

Detroit police officers Robert Young and Marquis Scott responded to the call regarding the dog bite. When they arrived at the location, the officers allege that they spoke with Ms. Hunt who showed them the still-bleeding wound inflicted by the dog. Ms. Hunt purportedly pointed to the pit bull terrier which had taken up a position on the front porch of plaintiff's house next door and told the officers that this was the dog which had bitten her. At this time, defendant claims that the dog was unrestrained and that plaintiff's home was unoccupied. The officers then called for an ambulance and a supervisor, and instructed Ms. Hunt to wait inside her house until the ambulance arrived. When the officers returned to their patrol car, they claim that they noted that plaintiff's pit bull terrier was then lying down on the front porch. When the ambulance arrived, however, the officers report that the pit bull terrier jumped to its feet and assumed an aggressive stance.

Defendant provides the following account of the events which next transpired. The officers exited their patrol car and waited on the sidewalk while the ambulance attendants retrieved their equipment. The two attendants then began walking with the officers toward Ms. Hunt's front door. As the four walked up Ms. Hunt's front walk, plaintiff's dog began to bark viciously. The dog then ran across plaintiff's front porch, down the steps and across the front lawns straight toward the officers and ambulance attendants. The officers yelled to the ambulance attendants to run inside the house. As the attendants ran up the stairs, plaintiff's pit bull terrier continued to advance in a menacing way, whereupon the officers drew their service revolvers and started shooting at the dog.

The officers shot plaintiff's pit bull until it stopped moving toward them. According to defendant, only one or two bullets hit the dog, killing it. Neither the officers nor the ambulance attendants were hurt in the incident. Plaintiff arrived home hours after the shooting and was informed of the events by a neighbor.

Plaintiff in a general fashion disputes defendant's version of the facts. *See* plaintiff's response ¶ 1 ("Plaintiff objects to all facts submitted and relied upon by Defendant in support of its motion for summary judgment.") In opposition to the facts presented by defendant, plaintiff attempts to rely upon the deposition testimony of Irvin Labrew in support of the theory that the police officers lured plaintiff's dog away from the porch for the purpose of killing it. Apart from the testimony of Mr. Labrew, plaintiff offers no other support for this contention. Significantly, plaintiff offers no testimony controverting defendant's allegations that the dog previously had bitten Lillian Hunt and that the dog

claims, contained in Counts I, II, IV, V, and VI of plaintiff's complaint, to Wayne County Circuit Court. The state law claims were for gross negligence (Count I), malicious destruction of property (Count II), conversion (Count IV), negligence per se (Count V), and trespass (Count VI). The only remaining count is Count III, alleging a civil rights violation pursuant to 42 U.S.C. § 1983.

was in the process of charging at the officers when it was killed.

## II. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have (the) effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.,* 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluating a motion for summary judgment, the Court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *See U.S. v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.,* 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R.Civ.Proc. 56(e); *Gregg,* 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.,*

[t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett,* 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block,* 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

## III. Analysis

At the outset, it is important to note that the instant motion concerns only plaintiff's claims against the municipality, defendant City of Detroit, and not against the individual defendants. In cases such as this one involving a § 1983 claim against a municipality, the United States Supreme Court has held that liability may be imposed *only where* a constitutional injury was caused by action taken "pursuant to official municipal policy of some nature." *See Monell v. New York City Dept. of Social Svs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is well-settled that occurrence of a single instance of a constitutional violation by an officer employed by the municipality is insufficient, in and of itself, to show the existence of a municipal policy underlying the violation. *See Oklahoma v. Tuttle,* 471 U.S. 808, 824, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). In the words of the Supreme Court, "the existence of the unconstitutional policy, and its origin, must be separately proved." *Id.*

Defendant argues that there is no evidence of any official policy or custom in the instant case which led to any constitutional violation. According to defendant, the officers acted in conformity with Michigan's Dog Law of 1919, M.C.L. § 287.279, which authorizes a law enforcement officer

to kill a dog which the officer sees in the act of attacking persons or livestock.[2] In the case at bar, defendant contends that there is no question of material fact that plaintiff's pit bull was seen in the act of attacking four persons, namely two officers and two paramedics and that the officers fired in defense of self and others. In support of this position, defendant has presented affidavit testimony of both officers on the scene, as well as the eyewitness testimony of Ms. Hunt that the dog had previously bitten her. *See* Aff. of Police Investigator Marquis Scott and Aff. of Police Investigator Robert Young, both attached as Exh. A to defendant's brief; *see also* Depo. of Lillian Hunt, attached as Exh. F to defendant's brief.

Defendant cites *Surplus Store and Exchange, Inc. v. City of Delphi*, 928 F.2d 788 (7th Cir.1991), a case involving a § 1983 action brought against a municipality based upon a police officer's seizure of rings which the officer thought were stolen. After the officer had released the rings to their purported owner without a judicial hearing, plaintiff pawn shop brought suit alleging violations of the Fourth and the Fourteenth Amendments. The Seventh Circuit affirmed the district court's granting of summary judgment in favor of defendant city. The appellate court based its decision on the fact that

plaintiff "fail[ed] to point to a specific [municipal] policy or custom directly and causally linked to the alleged deprivation." *Id.* at 790. The court was especially critical of plaintiff's failure to present any "policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the city]" which had caused the constitutional violation. *Id.* at 791 (citing *Sims v. Mulcahy*, 902 F.2d 524, 541–42 (7th Cir. 1990)).

At the hearing held May 5, 1999, defendant relied upon another case involving the interplay between the Due Process Clause and municipal liability under § 1983. In *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), a city sanitation department employee had died of asphyxia after entering a manhole in order to unstop a sewer line. *Id.* at 117, 112 S.Ct. 1061. His widow brought a § 1983 claim against defendant municipality alleging that the city's failure to train and warn its employees about known hazards in the workplace constituted a due process violation. The Supreme Court, in rejecting the § 1983 claim, reiterated that "[a] city is not vicariously liable under § 1983 for the constitutional torts of its agents: It is only liable when it can be fairly said that the city itself is the wrongdoer." *Id.* at 122, 112 S.Ct. 1061.[3] The Court emphasized that

**2.** Michigan Compiled Laws § 287.279 provides, in full, as follows:

> [a]ny person including a law enforcement officer may kill any dog which he sees in the act of pursuing, worrying, or wounding any livestock or poultry or attacking persons, and there shall be no liability on such person in damages or otherwise, for such killing. Any dog that enters any field or enclosure which is owned by or leased by a person producing livestock or poultry, outside of a city, unaccompanied by his owner or his owner's agent, shall constitute a trespass, and the owner shall be liable in damages. Except as provided in this section, it shall be unlawful for any person, other than a law enforcement officer, to kill or injure or attempt to kill or injure any dog which bears a license tag for the current year.
>
> M.C.L. § 287.279.

**3.** In *Collins*, plaintiff did not advance a *procedural* due process claim, but instead relied upon the substantive component of due process "that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* at 125, 112 S.Ct. 1061 (quoting *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). The Court held that "[n]either the text nor the history of the Due Process Clause supports petitioner's claim that the governmental employer's duty to provide its employees with a safe working environment is a substantive component of the Due Process Clause." *Id.* at 126, 112 S.Ct. 1061. In the case at bar, plaintiff appears to be relying upon *both* procedural and substantive aspects of the Due Process Cause. Plaintiff alleges that plaintiff was denied "notice and an opportunity to be heard" prior to the killing of her dog. In addition, plaintiff maintains that the city's

plaintiff's claim was closely analogous to a "fairly typical state-law tort claim:"

> The city breached its duty of care to her husband by failing to provide a safe work environment. Because the Due Process Clause "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society," [*Daniels v. Williams,* 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ], we have previously rejected claims that the Due Process Clause should be interpreted to impose federal duties that are analogous to those traditionally imposed by state tort law, *see, e.g., id.,* at 332–333, 106 S.Ct., at 665–666; *Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976).

*Id.* Applying the same reasoning, defendant in the instant case argues that plaintiff Hooper's claim under § 1983 would be more appropriately framed as a state-law tort claim.

Plaintiff, in response, attempts to rebut defendant's contention that the dog was in the process of attacking when it was killed, citing the deposition testimony of Irwin Labrew. *See* Exh. E to defendant's brief. Specifically, plaintiff points to Mr. Labrew's testimony that at some point after the dog had bitten Ms. Hunt, the officers were on plaintiff's porch and shining their lights on the dog. *See* Exh. E, pp. 12–13. This was apparently before the ambulance's arrival. *Id.* However, Mr. Labrew admits that he was *not* present at the time of the alleged attack on the officers and that he had left the scene for approximately one hour to go to the store. *See id.* at p. 17.

With respect to establishing the existence of some official policy or custom motivating the alleged constitutional violation, plaintiff argues that defendant police

failure to train police officers makes it "reasonably foreseeable that said failure to train

officer Young has never received any training to prepare himself for circumstances with dogs involving police intervention. Plaintiff maintains that the city's training manual only addresses circumstances of mad dogs with rabies. According to plaintiff, the manual does not contain any instructions, directions or procedures for contacting "Animal Control" in such situations. *See* Plaintiff's Brief in Response, p. 2.

In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388, 109 S.Ct. 1197. In *Canton,* the plaintiff brought a § 1983 claim against the city resulting from its failure to provide her with medical care while in custody. *See id.* at 381, 109 S.Ct. 1197. In addressing plaintiff's claim, the Supreme Court reaffirmed its prior pronouncement in *Monell, supra,* that "a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. Respondeat superior or vicarious liability will not attach under § 1983." *Canton,* 489 U.S at 385, 109 S.Ct. 1197 (citing *Monell,* 436 U.S. at 694–95, 98 S.Ct. 2018).

The first inquiry "in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." In *Canton,* the Court held that such a direct causal link could be found where the city fails to adequately train its officers. However, a city's liability for "failure to train" is not automatic and must be determined by considering the following factors, as articulated by Justice White:

would produce unconstitutional results...."

We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. This rule is most consistent with our admonition in *Monell,* 436 U.S., at 694, 98 S.Ct., at 2037, and *Polk County v. Dodson,* 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981), that a municipality can be liable under § 1983 only where its policies are the "moving force [behind] the constitutional violation." Only where a municipality's failure to train its employees in a relevant respect evidences a "deliberate indifference" to the rights of its inhabitants can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under § 1983. As Justice BRENNAN's opinion in *Pembaur v. Cincinnati,* 475 U.S. 469, 483–484, 106 S.Ct. 1292, 1300–1301, 89 L.Ed.2d 452 (1986) (plurality) put it: "[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives" by city policymakers. *See also Oklahoma City v. Tuttle,* 471 U.S., at 823, 105 S.Ct., at 2436 (opinion of REHNQUIST, J.). Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983.

*Canton,* 489 U.S. at 388–89, 109 S.Ct. 1197 (footnotes omitted).

■ Applying the standard for evaluating summary judgment motions contained in Federal Rule 56, this Court finds that defendant city has satisfied its initial burden of demonstrating the absence of any genuine issue of material fact. First, defendant has submitted unrebutted testimony that Ms. Hunt was attacked and bitten on the leg by plaintiff's dog, a wound requiring medical attention. Second, defendant has also offered testimony that the officers and paramedics were later menaced by the same dog, after the ambulance arrived to attend to Ms. Hunt. Mr. Labrew's testimony, upon which plaintiff so heavily relies, does not controvert the officers' testimony that the dog was in the process of attacking them when it was shot. Mr. Labrew, by his own admission, was not at the scene at the time the dog was killed and can only testify to the fact that the officers at some point prior to the attack were seen on plaintiff's porch. Plaintiff's theory that the dog was "lured" from the porch is entirely unsubstantiated. Since defendant has met its initial hurdle, the burden now shifts to plaintiff to set forth specific facts showing a genuine triable issue. *See* Fed.R.Civ.Proc. 56(e); *see also Gregg,* 801 F.2d at 861.

Plaintiff is unable to satisfy this shifted burden. Even assuming *arguendo* that plaintiff were able to establish that a constitutional violation had occurred when the officers shot and killed plaintiff's dog, the Supreme Court's decisions in *Monell, Tuttle,* and *Canton,* require that something more be shown in order for liability to attach in a § 1983 action against a municipality. For the reasons set forth immediately below, plaintiff has failed to raise a genuine issue of material fact relating to the existence of any municipal policy, practice or custom which caused the alleged constitutional deprivation.

Plaintiff appears to rest his claim of municipal liability on the city's failure to train its officers in handling situations involving mad dogs. However, as discussed, the Supreme Court in *Canton* has held that "the inadequacy of police training may serve as the basis for § 1983 liability *only where* the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Canton,* 489 U.S. at 388, 109 S.Ct. 1197 (emphasis added). Plaintiff has not provided any evidence of "deliberate indifference" on the part of city officials. To the contrary, the police training manual does address situations involving mad dogs afflicted with rabies. In addition, plaintiff has failed to present any evidence tending

to show a "a direct causal link" between any municipal policy or custom and the alleged constitutional deprivation.

As a final note, with respect to any claim plaintiff might be making that the city violated her *procedural* due process rights, the Court finds it highly unlikely that defendant City of Detroit could have afforded plaintiff "notice and an opportunity to be heard" prior to depriving her of her property under the facts presented in the case at bar. From all the unrebutted and well-supported facts presented by defendant's witnesses at the scene, the dog was charging the officers and paramedics at the time of its demise. Certainly defendant municipality does not run afoul of the Due Process Clause for failing to provide the dog's owner with "notice and an opportunity to be heard" under such emergency circumstances. To suggest otherwise would lead to ludicrous and impractical results.

Accordingly, this Court will grant defendant City of Detroit's motion for summary judgment.

### ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendant City of Detroit's motion for summary judgment is **GRANTED.**

**SO ORDERED.**